# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | | |
|---|---|---|
| DREYON WYNN, | ) | Case No. 3:22-CV-01899 |
| | ) | |
| Plaintiff, | ) | JUDGE JAMES R. KNEPP II |
| | ) | |
| v. | ) | |
| | ) | |
| UNIVERSITY OF TOLEDO, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT UNIVERISTY OF TOLEDO'S NOTICE OF FILING DEPOSITION OF JOHN G. ELLIOTT**

Now comes Defendant and hereby gives notice of filing of the following deposition along with its exhibits in support of its Motion for Summary Judgment.

**DEPONENT**

**DEPOSITION HELD**

John G. Elliott

September 18, 2023

Respectfully submitted,

DAVE YOST (0056290)
Attorney General of Ohio

*/s/ Drew C. Piersall*
Drew C. Piersall (0078085)
Scott H. DeHart (0095463)
Zashin & Rich Co., L.P.A.
17 South High Street, Suite 900
Columbus, Ohio 43215
Telephone:     (614) 224-4411
Facsimile:     (614) 224-4433
*dcp@zrlaw.com*; *shd@zrlaw.com*

*Attorneys for Defendant*

1

**CERTIFICATE OF SERVICE**

This will certify that the foregoing was filed electronically on November 29, 2023.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

*/s/ Drew C. Piersall*
Drew C. Piersall (0078085)
Zashin & Rich Co., L.P.A.

```
               UNITED STATES DISTRICT COURT
                NORTHERN DISTRICT OF OHIO
                    WESTERN DIVISION
DREYON WYNN,                    )
                                )
              Plaintiff,        )
                                ) Case No. 3:22-cv-01899
       vs.                      ) Judge Knepp
                                )
UNITED OF TOLEDO,               )
                                )
              Defendant.        )


                         - - -


                     DEPOSITION
                        OF
                   JOHN G. ELLIOTT
                 VIA ZOOM CONFERENCE


                         - - -


DATE:      Monday, September 18, 2023

TIME:      4:01 p.m.

REPORTER:  Teri Genovese Mauro, RPR


                         - - -


           GENOVESE & RENO REPORTING SERVICE
             414 N. Erie Street, Suite 100
                  Toledo, Ohio  43604
                    (419) 249-2705
```

JOHN ELLIOTT
September 18, 2023

I N D E X

DEPOSITION OF JOHN G. ELLIOTT

Examination                          Page
    By Ms. Sharkey                    6

            - - -

Plaintiff's Exhibits

    1                                 7
    2                                 9
    3                                15
    4                                14
    5                                21
    7                                29
    8                                32
    9                                34
    10                               38
    11                               40
    22                               52

            - - -

Objections
        By Mr. Piersall               23
        By Mr. Piersall               29
        By Mr. Piersall               31
        By Mr. Piersall               45
        By Mr. Piersall               51

Electronically signed by Teri Genovese (001-142-143-1430)          44ed0520-5982-4ff9-8cbb-d6c59eb69b15

JOHN ELLIOTT
September 18, 2023

```
By Mr. Piersall                55

By Mr. Piersall                55

                    - - -
```

Electronically signed by Teri  Genovese (001-142-143-1430)       44ed0520-5982-4ff9-8cbb-d6c59eb69b15

JOHN ELLIOTT
September 18, 2023

4

1    APPEARANCES:

2        On behalf of the Plaintiff:

3            THE LAW OFFICE OF NORMAN A. ABOOD
             136 N. Huron Street
4            Toledo, Ohio  43604  (419) 724-3701
             By:  SUSAN K. SHARKEY
5
         On behalf of the Defendant:
6
             ZASHIN & RICH
7            17 South High Street, Suite 900
             Columbus, Ohio 43215 (614) 224-4411
8            By:  DREW C. PIERSALL

9            THE UNIVERSITY OF TOLEDO
             Senior Associate General Counsel
10           University Hall, UH 3620, Main Campus
             Toledo, Ohio  (419) 530-5393
11           By:  JANELLE M. SCHALLER

12   ALSO PRESENT:  Dreyon Wynn

13                        - - -

14              (Whereupon, all parties and the

15         reporter attending via Zoom conferencing.)

16              THE REPORTER:  Good afternoon,

17         everyone.  My name is Teri Genovese Mauro.

18         I am a registered professional reporter.

19         Today's date is September 18, 2023, and

20         the time is 4:01 p.m.  This is the

21         deposition of John Elliott.

22              I'm going to ask everyone to please

23         talk slowly and enunciate, talk into your

24         microphone, and be aware that the reporter

25         can only take one person speaking at a

Electronically signed by Teri Genovese (001-142-143-1430)                    44ed0520-5982-4ff9-8cbb-d6c59eb69b15

JOHN ELLIOTT
September 18, 2023

5

1              time.

2                   At this time, I will ask counsel to

3              identify yourself, state whom you

4              represent, and agree on the record that

5              there is no objection to the officer

6              administering a binding oath to the

7              witness via Zoom conference.

8                   MS. SHARKEY:  I'm Susan Sharkey of

9              Norman Abood -- the law office of Norman

10             Abood.  We represent plaintiff Dre Wynn

11             and I have no objection.

12                  MR. PIERSALL:  Good afternoon.  My

13             name is Drew Piersall with the law firm of

14             Zashin & Rich.  I represent the defendant

15             in this matter, The University of Toledo.

16             Also with me is Janelle Schaller who is

17             in-house counsel for UT, and we do not

18             have any concerns or problems with the

19             remote swearing in of Mr. Elliott.

20                  MS. SHARKEY:  I'd like to mention

21             that Mr. Wynn is also here, also present.

22                     JOHN G. ELLIOTT,

23     was by me first duly sworn, hereinafter certified,

24     testified and said as follows:

25                        - - -

Electronically signed by Teri  Genovese (001-142-143-1430)                    44ed0520-5982-4ff9-8cbb-d6c59eb69b15

JOHN ELLIOTT
September 18, 2023

6

```
 1                   EXAMINATION
 2   BY MS. SHARKEY:
 3       Q    Okay.  Mr. Elliott, we met before, I
 4   believe.  My name is Susan Sharkey.
 5       A    Hi, Susan.
 6       Q    Hi.  I believe we deposed you before, so
 7   I'm not going to go through all the depo rules, but
 8   just a reminder to try not to speak over me, and I
 9   will try not to speak over you.  So let me finish my
10   question prior to asking.
11            Is there any reason that you cannot
12   truthfully give testimony today?
13       A    Is there a reason I can't be truthful?
14       Q    Correct.
15       A    No.  There's no reason why I can't be
16   truthful.
17       Q    Okay.  That's all I need to know.
18       A    Okay.
19       Q    We're scheduled for two hours and
20   hopefully it won't be longer than that.  If you need
21   a break, though, just let us know and we'll take a
22   break.  Okay?
23       A    Okay.
24       Q    Okay.  Now, I need to share my screen.
25   Can you see my screen?
```

Genovese & Reno
(419)249-2705

Electronically signed by Teri  Genovese (001-142-143-1430)                                          44ed0520-5982-4ff9-8cbb-d6c59eb69b15

JOHN ELLIOTT
September 18, 2023

7

```
 1        A     Yes.
 2              (Whereupon, Plaintiff's Exhibit 1 was
 3        marked for identification.)
 4        Q     Okay.  And do you know what this document
 5    is?
 6        A     It looks like an offer letter.
 7        Q     And who's it an offer letter to?
 8        A     It says John Elliott.  That's me.
 9        Q     Okay.  So is this a letter you received
10    from The University of Toledo?
11        A     Yes.
12        Q     Okay.  And I'm zooming down a little bit
13    here.
14        A     Okay.
15        Q     Down here, it says the annual salary is
16    $250,000, correct?
17        A     That's right.
18        Q     Okay.  And that's what you made there,
19    correct?
20        A     Yeah, that's what I made there, plus a
21    housing allowance.
22        Q     How much was the housing allowance?
23        A     $1,000 a month.
24        Q     Okay.  And it indicates a two-year period
25    of time over this employment; is that correct?
```

Electronically signed by Teri  Genovese (001-142-143-1430)                                    44ed0520-5982-4ff9-8cbb-d6c59eb69b15

JOHN ELLIOTT
September 18, 2023

8

1       A    Yes.

2       Q    And were you there for two years?

3       A    Yes.

4       Q    Did you leave early?

5       A    No.

6       Q    Okay.  Any reason you didn't continue with

7  UT after that contract was up?

8       A    No.  What I -- you know, when I accepted

9  the job, I told Dr. Postel and Matt that I would --

10  you know, I wasn't going to be able to -- more than

11  likely I didn't see myself making a permanent move

12  to Toledo, but I would -- what they were needing

13  done was probably going to be a two-year project and

14  so I said I'll agree to a two-year agreement.

15      Q    Okay.  And are you working now?

16      A    Yes.

17      Q    Okay.  Where are you working now?

18      A    I work at the University of South Alabama.

19      Q    Okay.  Now, when you were at UT, what were

20  your job duties basically?

21      A    I was in charge of all of the human

22  resources' functions and activities.  So that, you

23  know, includes recruiting, employment, compensation,

24  benefits, labor, training, HRIS, and I think that

25  was it.

Electronically signed by Teri  Genovese (001-142-143-1430)                                                    44ed0520-5982-4ff9-8cbb-d6c59eb69b15

JOHN ELLIOTT
September 18, 2023

9

1      Q    Okay.  And were you involved in talent

2    strategy at all?

3      A    Yes.  But Melissa Hurst was on point for

4    that, and she did report to me for a while, and so

5    for a period of time, yes.  Her position that she

6    was responsible for in talent strategy, that role

7    did report up to me.

8      Q    Okay.  Thank you.  I'm showing you

9    Exhibit 2.

10              (Whereupon, Plaintiff's Exhibit 2 was

11          marked for identification.)

12      Q    Can you see that on your screen?

13      A    Yes.

14      Q    And what is this document, if you know?

15      A    It's an affidavit.

16      Q    And it's an affidavit by you; is that

17    correct?

18      A    Yep.

19      Q    Okay.  I'm going down here, scrolling

20    down.  Is that your signature --

21      A    Yes.

22      Q    -- on the -- sorry.

23          So this is an affidavit made by you?

24      A    Yes.

25      Q    Okay.  Why did you make this affidavit?

Electronically signed by Teri Genovese (001-142-143-1430)                    44ed0520-5982-4ff9-8cbb-d6c59eb69b15

JOHN ELLIOTT
September 18, 2023

10

1      A    Because Janelle probably asked me to.

2      Q    Okay.  Thank you.

3      A    I'm 80 percent sure that's why.  I mean, I

4  didn't do it on my own.  The legal office would have

5  asked me to do that.

6      Q    Okay.

7           MR. PIERSALL:  John, real quick.

8           Just obviously don't divulge any

9           conversations with UT legal, please.

10          MS. SHARKEY:  Yes.  And I hopefully

11          won't ask any.

12     Q    Okay.  Now, as you look at Paragraph 2 of

13  the affidavit, about in the middle, I soon found out

14  that there was significant negative feedback from

15  internal UT customers concerning Dre Wynn.  Do you

16  see that?

17     A    Yes.

18     Q    And what specifically were these concerns?

19     A    He was not prepared for meetings.  His

20  follow-up was poor.  Communication was poor.

21  Documentation on grievances were not kept up.

22  Jennifer Cherry said that, you know, he didn't come

23  prepared.  I got negative feedback from

24  Chief Newton, Jason Toth, Monica Smith at the

25  hospital, and none of them found him to be reliable

Genovese & Reno
(419)249-2705

JOHN ELLIOTT
September 18, 2023

11

 1   or competent in the area of managing labor

 2   relations.

 3        Q    Okay.  Now, what meetings -- specifically

 4   what meetings was he not prepared for?

 5        A    I don't know.

 6        Q    Who specifically complained about him not

 7   being prepared for meetings?

 8        A    Monica Smith and Jennifer Cherry, and that

 9   was just one of the issues that was negative.

10        Q    So what did Jennifer Cherry specifically

11   tell you?

12        A    What I just stated, that he just wasn't

13   prepared for meetings and wasn't on time.

14        Q    And Monica Smith, what did she

15   specifically complain about --

16        A    That's the nature --

17        Q    -- with respect to being unprepared for

18   meetings?  Sorry.

19        A    That was the nature of the complaints.

20   That was -- I was having a meeting with the

21   executives at the hospital, and I was on the phone

22   with them when they were having a meeting and they

23   were having some questions about labor, and I said,

24   well, I'll, you know, get Dre to come over.  And

25   Rick Swaine, the CEO, said, John, I'm getting some

Genovese & Reno
(419)249-2705

JOHN ELLIOTT
September 18, 2023

12

1    feedback in the room that we don't want Dre coming

2    over, and that -- and I'm paraphrasing because this

3    is now a couple years ago.  So I'm giving you the

4    gist of it, 'cause I don't remember the specific

5    verbatim word-for-word version, but that was -- that

6    was the gist of it.

7              They said don't send him over because, you

8    know, he's not -- he's not reliable.  I don't know

9    if they used the word reliable or competent, but

10   they didn't want him to come by to try to assist.

11   That was clear.

12        Q    Now, what was your motivation for

13   suggesting that you send him to the meeting?

14        A    They were having some questions about

15   labor issues.

16        Q    Do you recall what specific questions they

17   were having?

18        A    No, ma'am.

19        Q    Okay.  And Dre would be the person that

20   you would normally send to respond to those issues;

21   is that correct?

22        A    Yes.  You know, when I first got there,

23   you know, we're in the October, November, December

24   time frame which is when much of this took place,

25   because he was just discharged in January, so this

Genovese & Reno
(419)249-2705

JOHN ELLIOTT
September 18, 2023

13

```
 1   would have been in the first 90 days.  I would
 2   have -- and Dre was there, so he would have been the
 3   point person for any labor issues.
 4        Q    Okay.  You started when at UT?
 5        A    October of 2020.
 6        Q    And had -- go ahead.
 7        A    October, yeah.  I'm looking at -- I'm
 8   looking at the -- at the affidavit.  It says
 9   September, but I don't think that's correct.  I
10   think it's October.
11        Q    Okay.  Well, Paragraph 2 says, when I came
12   on board at UT in October 2020, so that's what I was
13   relying on.
14        A    Oh, okay.
15        Q    Okay.  And was Dre an employee there when
16   you started?
17        A    Was Dre an employee at UT?
18        Q    Yes.
19        A    Yes, he was.  Yeah.
20        Q    Okay.  And do you know how long he'd been
21   there?
22        A    I'm guessing, but I want to say maybe a
23   year.
24        Q    Okay.
25        A    Maybe not quite a year.
```

Electronically signed by Teri  Genovese (001-142-143-1430)  44ed0520-5982-4ff9-8cbb-d6c59eb69b15

JOHN ELLIOTT
September 18, 2023

14

1     Q    Okay.  I'm jumping ahead to Exhibit 4.

2     A    Okay.

3          (Whereupon, Plaintiff's Exhibit 4 was

4          marked for identification.)

5     Q    Can you see this document?  It's hard --

6     A    Yeah.  Yeah.  Yeah.  March 25, 2020.

7  Yeah, I see it.

8     Q    Yeah.  What is this document, if you know?

9     A    It looks like a performance review.

10    Q    Okay.  And it's a performance review of

11 Dreyon Wynn, correct?

12    A    Yes, that's what it looks like.  Yes.

13    Q    Okay.  And this looks like the reviewer

14 was Wendy Davis; is that correct?

15    A    It looks like Wendy Davis reviewed him,

16 yes.

17    Q    Okay.  Now, I'm looking down at the bottom

18 of the first page, and it says general work values

19 and behaviors rating is a 4.  Do you see that?

20    A    Yes.

21    Q    Okay.  What does 4 mean?

22    A    Let's see.  4 says frequently exceeds.

23    Q    Okay.  So frequently exceeds his job

24 duties; is that correct?

25    A    That's what it says.

Electronically signed by Teri Genovese (001-142-143-1430)                                    44ed0520-5982-4ff9-8cbb-d6c59eb69b15

JOHN ELLIOTT
September 18, 2023

15

1      Q    Now, had you seen this while you were
2    employed at UT?
3      A    I don't specifically remember, but more
4    than likely I probably did see it.  But I don't
5    remember exactly when.
6      Q    Okay.  But it's clear that Wendy Davis, at
7    least, held him at a 4, frequently exceeds?
8      A    Wendy Davis gave him a 4, that's right.
9      Q    Okay.  Now I'm looking at Exhibit 3.
10                (Whereupon, Plaintiff's Exhibit 3 was
11                marked for identification.)
12      Q    Do you know what this is?
13      A    Job description.
14      Q    Right.  And it looks like it's for Dreyon
15    Wynn, correct?
16      A    Yes.
17      Q    Can you tell me generally what his job
18    duties are?  Or you can review this document.  I'll
19    scroll through it if you prefer.
20      A    No.  That's okay.  So Dre had a title of
21    director of labor relations.  Oh, there's his title
22    right there.  Labor/employee relations and HR
23    compliance.
24                And he was -- we had some different
25    unions.  I can't recall them all.  Well, there they

Electronically signed by Teri Genovese (001-142-143-1430)                                   44ed0520-5982-4ff9-8cbb-d6c59eb69b15

JOHN ELLIOTT
September 18, 2023

16

1    are right there; AFSCME, CWA, UTPPA.

2            So we had these unions, and he, as the

3    director of labor, is responsible for working with

4    the unions and helping to manage the union

5    relationship on behalf of the university.

6        Q    Okay.  Was that his sole -- was that his

7    sole duty?

8        A    Yes.  Those were his duties, yeah.

9        Q    Okay.  Did he have any duties on top of

10   those duties?

11       A    I don't remember that he did.

12       Q    Well, the title says HR compliance.  Does

13   that ring a bell?

14       A    Yeah, he does have that title.  So

15   labor/employee relations and HR compliance, and I

16   thought your question was did he have other duties

17   besides that.

18       Q    Okay.  Well, I guess you talked about

19   labor and he had to deal with unions and what have

20   you, but --

21       A    Yeah.

22       Q    -- I'm just wondering what the HR

23   compliance part means.  Do you know?

24       A    I don't know what Dre was doing in that

25   particular area.  There had previously been --

Electronically signed by Teri Genovese (001-142-143-1430)                    44ed0520-5982-4ff9-8cbb-d6c59eb69b15

JOHN ELLIOTT
September 18, 2023

17

1    I believe there had previously been a director of HR
2    compliance, and I believe that that person left.  I
3    can't remember her name or what the circumstances
4    were.  And so it looks like all of that was a part
5    of Dre's job, Dre Wynn's job.
6        Q    Do you know whether the person that Dre
7    replaced in the labor relations job had also been
8    the director of labor/employee relations?
9        A    I don't -- I don't think so.
10       Q    Okay.  So this -- as far as you know, this
11   HR compliance component was added on when Dre got
12   hired?
13       A    No.  It looks to me like this was created
14   in November of 2019, and if the previous document
15   was correct, and I assume that it was, it looks like
16   he was hired in March of 2020.  So it -- the way I'm
17   interpreting these documents is this job description
18   was created in November, and then it looks like Dre
19   was hired four months later into this job.  That's
20   how I'm interpreting the documents.
21       Q    Oh, okay.  That's fine.  Do you recall a
22   situation in October 2020 where Dre had some sort of
23   an issue with his CWA union representative?
24       A    A CWA union representative?
25       Q    Yes.

Electronically signed by Teri Genovese (001-142-143-1430)                    44ed0520-5982-4ff9-8cbb-d6c59eb69b15

JOHN ELLIOTT
September 18, 2023

18

1     A    I don't know specifically what you might
2   be referring to.
3     Q    Okay.  Go ahead.
4     A    I mean, CWA sounds very familiar to me,
5   but the CWA rep, I'm not sure who that might be.
6     Q    Okay.  But do you have any recollection of
7   any sort of a run-in between Dre and the union?
8     A    I don't think Dre ever had any run-ins
9   with the union that I can recall.
10    Q    Okay.
11    A    But he could have.  I just don't remember
12  it.
13    Q    Okay.  Do you recall in November 2020 that
14  Mr. Wynn issued a grievance response which misstated
15  facts which were detrimental to UT?
16    A    Can you say that again?
17    Q    In November 2020, Wynn issued a grievance
18  response misstating facts detrimental to UT.
19    A    He responded to a grievance?
20    Q    That's what the allegation is, yes.
21    A    Okay.  Maybe it was the person that was a
22  CWA -- was it -- Jason Toth was restructuring a
23  position that was a CWA bargained-for job.  Is that
24  the one?
25    Q    Well, I'm not sure.  I'm just looking at

Electronically signed by Teri Genovese (001-142-143-1430)              44ed0520-5982-4ff9-8cbb-d6c59eb69b15

JOHN ELLIOTT
September 18, 2023

19

1    these are allegations that were actually in --

2        A    Oh.

3        Q    -- UT's position statement.  And I'm just

4    wondering if you have any knowledge of the specific

5    allegations that were made in the position

6    statement.

7        A    I don't remember Dre having any conflict

8    with a CWA rep.  Now he could have.  And if there's

9    something in the documents that I can see that might

10   refresh my memory, I'd be happy to look at those,

11   but I'm not remembering what you're describing to me

12   right now.

13       Q    Okay.  It goes on to state that management

14   had presented no documentations during a hearing.

15   That Dre had represented that management had

16   presented no documentation during a hearing when, in

17   fact, management had introduced documentation during

18   a hearing.  Do you have any recollection of that?

19       A    No.  And I don't remember being -- being

20   the management that they're talking about that

21   did -- withheld documentation.

22       Q    Okay.  In November 2020, Wynn negotiated a

23   memorandum of understanding with a bargaining unit

24   that he lacked authority to agree to.

25       A    Say that again.

Electronically signed by Teri Genovese (001-142-143-1430)                    44ed0520-5982-4ff9-8cbb-d6c59eb69b15

JOHN ELLIOTT
September 18, 2023

20

 1      Q     Okay.  In November 2020, Wynn negotiated a
 2   memorandum of understanding with a bargaining unit
 3   that he lacked authority to agree to.  A memorandum
 4   of understanding.  Do you have a recollection of
 5   that?
 6      A     Wow.  We had so many MOUs.  It's like we
 7   had MOUs all the time.  I don't remember
 8   specifically which one though.
 9      Q     Do you recall one that was problematic for
10   Dre's involvement?
11      A     Do I remember what, ma'am?
12      Q     Do you remember one that was problematic
13   because of Dre's involvement?
14      A     Not offhand I don't.
15      Q     Okay.  The next one says in November 2020
16   Dre agreed to a letter of agreement that placed a
17   member of one bargaining unit from a CWA into a
18   position in another bargaining unit, AFSCME, in
19   direct violation of the AFSCME contract.  Do you
20   recall that?
21      A     That was the AFSCME contract or the CWA?
22      Q     Well, apparently he put someone from CWA
23   into an AFSCME position.
24      A     Dre did?
25      Q     That's what this allegation says.

Electronically signed by Teri  Genovese (001-142-143-1430)                    44ed0520-5982-4ff9-8cbb-d6c59eb69b15

JOHN ELLIOTT
September 18, 2023

21

```
 1        A    Sorry.  I just don't -- I don't remember
 2   that.  I --
 3        Q    Okay.  Now, there's one -- the final
 4   one -- the final allegation here is that your
 5   assistant had been looking for Dre at the request of
 6   another employee.  When Elliott asked Wynn about it,
 7   he defensively accused Elliott's assistant and his
 8   colleague of making false statements.  Do you recall
 9   that incident?
10        A    My admin support person was Pamela
11   Schwartz, and so that allegation is saying that
12   Pamela Schwartz did -- made a false accusation
13   against Dre?
14        Q    Well, let me read it again.  Pam Schwartz,
15   I guess your assistant, had been looking for Wynn at
16   the request of another employee.  When Elliott asked
17   Wynn about it, he defensively accused Elliott's
18   assistant and his colleague of making false
19   statements.
20        A    I mean, it's definitely possible, but I
21   don't remember the specifics.
22        Q    Okay.
23                  (Whereupon, Plaintiff's Exhibit 5 was
24             marked for identification.)
25        Q    I'm showing you now what's marked as
```

Genovese & Reno
(419)249-2705

Electronically signed by Teri  Genovese (001-142-143-1430)                    44ed0520-5982-4ff9-8cbb-d6c59eb69b15

JOHN ELLIOTT
September 18, 2023

22

1    Exhibit 5.  Can you see that on your screen?

2         A    Yes.

3         Q    And can you tell me what this document is?

4         A    It's a discharge letter.  It's a discharge

5    of employment letter.

6         Q    Okay.  And to whom is the employee or who

7    is the employee?

8         A    Dre Wynn.

9         Q    Okay.  Now, I'm going to scroll down a

10   little bit, oops, to the bottom.  Is that your

11   signature?

12        A    Yes.

13        Q    So you wrote this letter to Mr. Wynn?

14        A    No, I didn't write it.  My admin would

15   have written it.  I would have definitely read it

16   and approved of it before signing it.

17        Q    Okay.  So you approved of this letter?

18        A    Yes.

19        Q    Okay.  All right.  Now, it gives Dre a

20   90-day notice.  What does a 90-day notice mean to

21   UT?

22        A    I believe that is, if I remember

23   correctly, the State of Ohio -- I think it says it

24   right there, in accordance with your appointment

25   with the unclassified civil service for the State,

Electronically signed by Teri  Genovese (001-142-143-1430)                    44ed0520-5982-4ff9-8cbb-d6c59eb69b15

JOHN ELLIOTT
September 18, 2023

23

1   you're at will, and that's normally the consistent

2   practice is to give a 90-day notice.

3       Q    So basically they're still employed by the

4   university for 90 days until they're terminated,

5   correct?

6       A    Say that again.

7       Q    They are basically still employed with the

8   university for 90 days until their final termination

9   date; is that correct?

10              MR. PIERSALL:  Objection as to form,

11          but go ahead, John.

12      A    No.  They're not working, but they do

13  receive pay for 90 days.  So I guess it's yes and

14  no.  No, they're not working and doing anything from

15  an employment standpoint.  But, yes, they are paid

16  for 90 days in accordance with State policy.

17      Q    And why did you send this letter to Dre?

18      A    Because he -- because of poor performance.

19      Q    And what specifically do you mean by poor

20  performance?

21      A    What his supervisor indicated was -- and

22  what she told him on the phone was that his

23  communication and organization -- his communication

24  and organization skills -- I don't remember again

25  the verbatim version.  I'm giving you the essence of

Electronically signed by Teri  Genovese (001-142-143-1430)                44ed0520-5982-4ff9-8cbb-d6c59eb69b15

JOHN ELLIOTT
September 18, 2023

24

1    the conversation.

2            But his communication and his organization

3    were not sufficient for him to be successful in this

4    role and that that termination notification was

5    delivered to Dre by phone from Bethany Ziviski.  And

6    Bethany Ziviski reported to me at the time, and I

7    supported the termination as you can see from the

8    letter that we sent.

9        Q    Were you on that phone call with Bethany

10   and Dre?

11       A    I was not on the phone, but I was in her

12   office.

13       Q    Okay.  And what exactly were the problems

14   with communication?

15       A    Again, it was the -- you know, just a lack

16   of follow-up communication, follow-through

17   communication.  I want to say there was an issue.

18   Bethany had been trying to get information on

19   grievances and how many and with which bargaining

20   unit.  She was trying to get this information from

21   him, and I think I recall her just being frustrated

22   that she couldn't get what she needed from him.

23       Q    When -- to your knowledge, when did this

24   lack of communication begin?  Was that always the

25   case, or did he develop a lack of communication, or

Electronically signed by Teri Genovese (001-142-143-1430)          44ed0520-5982-4ff9-8cbb-d6c59eb69b15

JOHN ELLIOTT
September 18, 2023

25

1   what is your take on that?

2        A    If you're interested in theory?

3        Q    I'm interested in facts.

4        A    You know, so I was only there three months

5   and, you know, he was not very reliable.  He was not

6   in the office very often.  Maybe once or twice a

7   week.

8             But he was -- you know, the fact is, you

9   know, he was working for the City of Cleveland, and

10  I believe he was just unable -- you know, a

11  full-time job is full-time, and when you're trying

12  to juggle two very full-time jobs and be a

13  part-time, you know, faculty member for a community

14  college, I think it's going to be very difficult for

15  you to perform at an acceptable level for when

16  you're serving three masters like that.

17       Q    Okay.  But you were not -- you were not

18  aware of his employment with the City of Cleveland

19  at the time you gave him this letter; is that

20  correct?

21       A    No, I wasn't aware of it.  But in

22  retrospect, it made sense to me after the fact if

23  that helps.

24       Q    Okay.  Were you aware of the fact that he

25  was working at Cleveland Community College at the

Electronically signed by Teri Genovese (001-142-143-1430)           44ed0520-5982-4ff9-8cbb-d6c59eb69b15

JOHN ELLIOTT
September 18, 2023

26

1   time you gave him this letter?

2       A    No.  I was aware that he was working

3   for -- I mean, at the time of the letter, no.  No.

4       Q    Okay.  Any other problems with

5   communication?  You said Beth Ziviski was

6   frustrated.  Any other complaints about his

7   communications?

8       A    Every person that I spoke with when I got

9   there gave Dre a negative review.

10      Q    And who did you speak to about this?

11      A    Every one of them.  So there wasn't --

12  there was -- no one gave him any positive reviews

13  for he's good, he's reliable, he's helpful, he's

14  competent, he knows what he's -- none of that.

15  Well, Chief Newton and his lieutenant and, like I

16  said, the executives at the hospital and even some

17  of the internal HR staff --

18      Q    Can you give me names other than

19  Chief Newton of who else complained about his

20  communication?

21      A    Well, Monica Smith, Jennifer Cherry.  And

22  the nature of the complaints all surrounded around

23  reliability, lack of communication, lack of

24  follow-up, lack of preparedness, lack of being on

25  time and timeliness.

Electronically signed by Teri Genovese (001-142-143-1430)          44ed0520-5982-4ff9-8cbb-d6c59eb69b15

JOHN ELLIOTT
September 18, 2023

27

1          So if you're asking me which person said

2     what two years ago, I don't remember the verbatim of

3     all of those conversations.  I'm just -- I'm giving

4     you the essence of it.  But no one had anything

5     positive to say about his performance.

6          Q    At what point -- scratch that.

7               You said you heard this when you first

8     started; is that correct?

9          A    Yes.

10         Q    Okay.  And did you take any corrective

11    action at that point to talk with Dre or to counsel

12    him?

13         A    I did -- I told Dre that there were

14    concerns, but I didn't -- I didn't take any

15    corrective action at that particular time.  I was

16    waiting for Bethany to arrive to do her assessment

17    and that was important to me that she do an

18    assessment as well.

19         Q    Do you recall when Bethany arrived?

20         A    January.  January of '21.

21         Q    Are you aware that -- whether Bethany

22    engaged in any formal discipline with respect to

23    Dre's communication?

24         A    I don't think there was anything formal,

25    but I'm not 100 percent sure.

Electronically signed by Teri Genovese (001-142-143-1430)                    44ed0520-5982-4ff9-8cbb-d6c59eb69b15

JOHN ELLIOTT
September 18, 2023

28

1      Q    Do you know whether he was counseled at
2    all about his lack of communication skills?
3      A    Don't recall.
4      Q    Okay.  Now, I believe you said the other
5    one was organization.  That was a problem.  Give me
6    an idea of what the organizational problems were.
7      A    Well, the one that sticks out to me was
8    that he -- Bethany was trying to get organized
9    around the grievances, I believe it was, for the
10   different unions.  There were a lot of grievances
11   that were backlogged, and I think she was trying to
12   get organized around that, and I don't think Dre was
13   able to organize this information and this data and
14   get it to her in a timely manner and -- or I don't
15   even know if she got it from him before he left.
16   I'm not 100 percent sure on that.  But that's the
17   organizational matter that sticks out to me.
18     Q    And did you render any counseling or
19   discipline as a result of this organization problem?
20     A    I did not.  Not sure what Bethany was
21   doing with him in the first, you know, couple of
22   weeks that she was there.
23     Q    Do you know whether Bethany ever formally
24   counseled or ceded any discipline on Dre as a result
25   of his organization problems?

Electronically signed by Teri Genovese (001-142-143-1430)                    44ed0520-5982-4ff9-8cbb-d6c59eb69b15

JOHN ELLIOTT
September 18, 2023

29

1        A    I don't -- I don't think she did, but I'm
2    not 100 percent sure.
3        Q    Okay.  I'm going to Exhibit 7 right now.
4             (Whereupon, Plaintiff's Exhibit 7 was
5             marked for identification.)
6        Q    Can you see that on your screen?
7        A    Yes.
8        Q    And can you tell me what this document is?
9        A    Corrective action for non-collective
10   bargaining unit employees.  Okay.  It's a policy for
11   corrective action.
12       Q    Okay.  And Dre would be considered a
13   non-collective bargaining unit employee, correct?
14       A    Yes.
15       Q    Okay.  I'm going down to Section E on this
16   document.  University will ordinarily follow -- I'm
17   sorry, E1.  In cases involving the discipline of an
18   employee, the university will ordinarily follow the
19   principle of progressive corrective action through a
20   system of oral reprimand, written reprimand,
21   suspension, and dismissal.
22            Was Dre ever orally reprimanded for his
23   organizational -- lack of organizational skills?
24            MR. PIERSALL:  I would like to
25            object.  Real quick, John, let me object

Genovese & Reno
(419)249-2705

Electronically signed by Teri Genovese (001-142-143-1430)                    44ed0520-5982-4ff9-8cbb-d6c59eb69b15

JOHN ELLIOTT
September 18, 2023

30

```
 1            for the record that this policy, that
 2            specific paragraph, Section E, indicates
 3            it's applicable to classified employees.
 4            Dre was unclassified.
 5                MS. SHARKEY:  Oh, my mistake.
 6       A    And it's generally and ordinarily, but
 7  it's not an etched in stone rule, if you will.  But
 8  anyway, go ahead.  I'm sorry.
 9       Q    Well, all right.  So it's not etched in
10  stone.  At what point would you, as a supervisor,
11  feel it was relevant to go through those steps --
12       A    Yeah.
13       Q    -- the oral reprimand, the written
14  reprimand, those steps?
15       A    Yeah.  You know, for a director, it's
16  unacceptable to have those types of skills deficits
17  and to underperform along those lines as a director.
18  If he were -- if the employee were, you know, not in
19  management and they were having those types of
20  issues of organization and communication, then maybe
21  we might decide to try to salvage the employee.
22            Bethany and I discussed did we want -- you
23  know, is Dre salvageable.  But for those types of
24  skills deficits and for those types of performance
25  issues at a director level, no.  No.  You're not
```

Genovese & Reno
(419)249-2705

Electronically signed by Teri Genovese (001-142-143-1430)                    44ed0520-5982-4ff9-8cbb-d6c59eb69b15

JOHN ELLIOTT
September 18, 2023

31

1    going to get -- more than likely you're not going to

2    get a performance -- you know, a plan to try to

3    correct your communication issues when you're a

4    seasoned director.

5         So we discussed maybe we should demote

6    him.  Maybe we could do that.  Maybe we could

7    salvage him.  But Bethany didn't think he was

8    salvageable.

9         Those types of issues were, you know, for

10   a director just unacceptable, so she wanted to move

11   on and discharge his employment and find a

12   replacement that didn't have those issues.

13   Q    Well, given that his final written

14   employment evaluation gave him a frequently exceeds

15   overall score, did it concern you that there may be

16   something going on that could change Dre's operating

17   procedures?

18        MR. PIERSALL:  Objection to form, but

19        go ahead, John.

20   A    Well, no.  I appreciate the question.

21   I -- with all due respect, the person giving him the

22   evaluation also had a serious credibility issue with

23   performance, and, you know, that performance

24   evaluation we didn't -- you know, we didn't agree

25   that he was exceeding.  He was not -- he was not

Electronically signed by Teri Genovese (001-142-143-1430)                    44ed0520-5982-4ff9-8cbb-d6c59eb69b15

JOHN ELLIOTT
September 18, 2023

32

```
 1   exceeding.  He was not -- he was not satisfactory.
 2   His performance was not -- not good.  It just wasn't
 3   good.
 4          His credibility was ruined.  His
 5   reputation around the university, I think, was
 6   just -- was not good.  He just wasn't reliable.  I
 7   don't really know what else to say.
 8      Q    Okay.  I'm going to move on to
 9   Exhibit Number 8.
10      A    Okay.
11             (Whereupon, Plaintiff's Exhibit 8 was
12          marked for identification.)
13      Q    Can you see that on your screen?
14      A    I don't think you've selected it yet.  I'm
15   still seeing like corrective action.
16      Q    Okay.  Hang on here.  How about now?
17      A    Yes.
18      Q    Sorry.
19      A    Yeah.
20      Q    I was raised before computers was a thing.
21   So do you recognize this document?
22      A    Somewhat, yeah.  Dre to me on January the
23   6th.
24      Q    And take a minute and review it if you
25   want because I've got just a couple questions about
```

Electronically signed by Teri Genovese (001-142-143-1430)                                   44ed0520-5982-4ff9-8cbb-d6c59eb69b15

JOHN ELLIOTT
September 18, 2023

33

1    it.

2         A    It looks like he's working with the CWA

3    on -- it looks like he's negotiating with the CWA.

4         Q    Did you take issue with what he was

5    relating to you regarding the CWA?

6         A    I don't -- I don't remember taking issue

7    with it.  That would have been something that I

8    definitely would have probably shared with Matt

9    Schroeder anything that would have impact to budget,

10   and it looks like this would have.

11           It looks like, I believe, if we give at

12   least 1 percent to the CWA, it would give us tuition

13   and health insurance, contract language we want in

14   return.  I don't specifically remember.  I don't

15   dispute that this is an e-mail that I received.  And

16   I'm not disputing that I would have read it and --

17   but --

18        Q    Would you have agreed with it?

19        A    I don't remember.  I don't know.  And the

20   reason I don't know is the impact to budget is

21   something that, you know, I see the 1 percent, but

22   what does that mean.  Is 1 percent $500,000?  You

23   know, is it $50,000?  Is it two-and-a-half million

24   dollars?  I don't know.

25           So I don't know if I would have taken

Electronically signed by Teri  Genovese (001-142-143-1430)                                    44ed0520-5982-4ff9-8cbb-d6c59eb69b15

JOHN ELLIOTT
September 18, 2023

34

1   exception to it or not, but I'm almost certain I

2   would have wanted Matt or somebody from budget and

3   finance to see this before a decision was made.

4        Q    Okay.  A little bit -- almost near the

5   bottom of the page, it says, please review and

6   provide feedback.

7        A    Okay.

8        Q    Do you recall whether you reviewed and

9   provided feedback on this?

10       A    No, I don't recall it.  I'm sure I

11  reviewed it, and I'm sure we probably gave him

12  feedback at some point.  But, again, this would have

13  been something that I would have almost certainly

14  kicked up to Matt Schroeder or somebody in budget

15  and finance to get them to weigh in.

16             (Whereupon, Plaintiff's Exhibit 9 was

17        marked for identification.)

18       Q    Okay.  All right.  Okay.  I'm hopefully

19  showing you Exhibit 9.

20       A    Yeah.

21       Q    Can you see that on your screen?

22       A    Yes.

23       Q    And do you know what this document is?

24  Sorry.  I didn't mean to scroll past it.  Hang on

25  just a sec.  There we go.  Do you know what this

Electronically signed by Teri Genovese (001-142-143-1430)                    44ed0520-5982-4ff9-8cbb-d6c59eb69b15

JOHN ELLIOTT
September 18, 2023

35

1   document is?

2       A    It looks like this is Dre requesting a

3   stipend.

4       Q    Okay.  And do you recall this incident

5   where he requested a stipend?  Do you have

6   independent recall other than this e-mail?

7       A    Yeah.  I mean, but the e-mail helps me

8   with the recall, but, yes.

9       Q    Fair enough.  What is your recollection of

10  your response to this e-mail?

11      A    My response was -- I don't -- I don't know

12  that I was surprised by the request, but I didn't --

13  I don't think that I approved stipends for any

14  management staff in HR and -- yeah, he says he's

15  working around the clock, but he's working around

16  the clock for multiple employers with all due

17  respect.  I didn't --

18      Q    But you didn't know that --

19      A    -- know it at the time.

20      Q    -- at the time, correct?

21      A    That's true.  But now that I do know it,

22  it's -- it's very offensive to me.

23      Q    Okay.  Now, it asks you if you would check

24  with Matt and see if it would be possible to get the

25  stipend.  Did you check with Matt?

Electronically signed by Teri  Genovese (001-142-143-1430)          44ed0520-5982-4ff9-8cbb-d6c59eb69b15

JOHN ELLIOTT
September 18, 2023

36

1      A    I don't know.  I don't remember checking
2  with Matt.  I don't remember if I did or didn't.
3  Probably I did, because he's saying will you check
4  with him, but I don't -- I don't believe I would
5  have approved that.  That just would not have been
6  right.
7      Q    Well, knowing what we know now that he
8  allegedly had several different jobs, why wouldn't
9  you have approved it back then before you knew that?
10     A    He didn't have several different jobs.  He
11  had one job description.  Not three job
12  descriptions.
13     Q    That's not what I'm asking.
14     A    But I don't agree with the premise of your
15  question.
16     Q    Well, you said that you did not know at
17  the time that he was working other places in
18  addition to University of Toledo.
19     A    Right.
20     Q    So I'm asking why this was not granted,
21  why this request was not granted being that you
22  didn't know that information?
23     A    Because he's a manager.  He's in a
24  management position in an exempt level role.  It's
25  not an hourly job.  You're not paid by the hour.

Electronically signed by Teri Genovese (001-142-143-1430)                44ed0520-5982-4ff9-8cbb-d6c59eb69b15

JOHN ELLIOTT
September 18, 2023

37

1    There are many, many, many individuals in a

2    management capacity that work 50, 60 hours a week,

3    so if we were going to do stipends for, you know,

4    something like this, we would need to do stipends

5    for everybody in a management role that says they

6    work over 40 hours a week or they work extra.

7            So I -- there's no way I'm going to do it

8    for one person if I can't do it for others.  That

9    would be the basis of this being denied.

10       Q    Did the quality or lack of quality of his

11   work enter into your decision to deny the stipend at

12   all?

13       A    I don't know what entered into my mind

14   other than management, personnel, people that are in

15   exempt level roles work overtime.  They work beyond

16   40 hours a week regularly.  And that was what was of

17   paramount importance to me that I'm not going to do

18   this one thing for Dre if I can't do it for Jennifer

19   Cherry, Jason Beck.  These were some other leaders.

20           And even, you know, other leaders outside

21   of HR, you know, work many hours that are in

22   management exempt roles, and I'm just not going to

23   support doing that for one person.  I'm not going to

24   do it for my -- for my HR team.  So that was what

25   was on my mind.

Electronically signed by Teri Genovese (001-142-143-1430)                                    44ed0520-5982-4ff9-8cbb-d6c59eb69b15

JOHN ELLIOTT
September 18, 2023

38

1       Q    Okay.  So his performance in the position
2   did not enter your mind at this time?
3       A    I can't -- I don't recall what entered
4   into my mind, but like I said, there was no way I
5   was going to approve it for an exempt level
6   management person when there are many other exempt
7   level management people that work a lot of hours.
8                (Whereupon, Plaintiff's Exhibit 10
9            was marked for identification.)
10      Q    All right.  Can you see -- this is Exhibit
11  Number 10.
12      A    Okay.
13      Q    Can you see that?
14      A    I see it.  Yes, ma'am.
15      Q    Okay.  And can you tell me what this is?
16      A    Not yet.  Oh, flexible work agreement.
17      Q    Is that what that is?
18      A    That's what it looks like, yeah.
19      Q    Okay.  And your request has been approved.
20  Now, this came from Power Automate.  What is that,
21  if you know?
22      A    I think it's an automated document routing
23  system of some sort.  You're probably familiar with
24  like DocRoute or something like that maybe.  I think
25  this is like a similar-type application.

Electronically signed by Teri Genovese (001-142-143-1430)                                    44ed0520-5982-4ff9-8cbb-d6c59eb69b15

JOHN ELLIOTT
September 18, 2023

39

1      Q    Okay.  And it's to Dre Wynn and you,
2  correct?
3      A    Yes.  It's sent to Dre, and I'm copied.
4      Q    Okay.  Now, there is a plan to stagger
5  and/or rotate staff within the department between
6  the remote work and on-campus work to ensure
7  on-campus coverage while continuing operations, and
8  it says yes.  Is that your understanding?
9      A    Yes.  Yes.  That's my understanding.
10      Q    Now, is this something you agreed with,
11  this remote work schedule?
12      A    What happened -- if I can maybe give you a
13  little background.  So after -- I think after COVID
14  when employees were coming back, the staff were
15  wanting to have a flexible work arrangement policy,
16  and because one didn't exist and it had been done
17  very haphazardly and it wasn't managed very well at
18  all, so when they came back, the leaders wanted to
19  have a policy so we could have consistency with
20  flexible work arrangements.
21           And so a policy was developed and it was
22  called the flexible work arrangement policy.  And it
23  looks like it went into effect sometime after the
24  first of the year, and it looks to me like Dre is
25  going to work Tuesdays and Thursdays remote.

Electronically signed by Teri Genovese (001-142-143-1430)        44ed0520-5982-4ff9-8cbb-d6c59eb69b15

JOHN ELLIOTT
September 18, 2023

40

1    Q    Okay.  Did you have any input into the

2    decision to allow this particular document to take

3    effect?

4    A    Can I see the date up there again?  That

5    might help me answer accurately.  January the 5th.

6    Yeah.  That would have been -- that would have been

7    my approval.  There were a number --

8    Q    Okay.

9    A    -- of people that had requested flexible

10   work agreements in HR, and I don't believe that I

11   denied any of them.  I believe we approved them all.

12   Approved all of them.

13   Q    All right.  I am going to Exhibit 11.

14   A    Okay.

15         (Whereupon, Plaintiff's Exhibit 11

16         was marked for identification.)

17   Q    Let me get up to the top here.  Do you

18   recognize this document?

19   A    I don't see it yet.

20   Q    Oh, let me see here.  How about now?

21   A    No, ma'am.  There we go.  Yeah, it's

22   coming.

23   Q    Okay.

24   A    Jason Toth.  Okay.  Yeah.

25   Q    Okay.  Who is Jason Toth?

Electronically signed by Teri Genovese (001-142-143-1430)                    44ed0520-5982-4ff9-8cbb-d6c59eb69b15

JOHN ELLIOTT
September 18, 2023

41

1      A    Jason Toth was the facilities guy, VP of
2   facilities I think was his title.
3      Q    And what is facilities?  What kind of job?
4      A    I'm sorry.  There it is.  Senior associate
5   VP for administration.  Okay.  That was his title,
6   but his role and his duties, I believe, were
7   facilities.
8           So all of the buildings, you know, we have
9   many, many buildings, and all those buildings have
10  to be maintained and all of those sorts of things.
11  All the plumbers and electricians and painters and
12  trades folks, they all worked, you know, for Jason.
13  Boiler operators, those kind of people.
14     Q    Do you recall receiving this e-mail from
15  Dre?
16     A    Yes.  Vaguely.  Tuesday, January the 26th.
17  Wow, I think he was discharged that day.  I don't --
18  again, I don't dispute it, but I don't remember all
19  of it, but yeah.
20     Q    Okay.  What time was he given notice of
21  his termination on that day?
22     A    I don't know.
23     Q    Was it before or after this?  You don't
24  know if it --
25     A    I don't know his.

Genovese & Reno
(419)249-2705

Electronically signed by Teri  Genovese (001-142-143-1430)                                    44ed0520-5982-4ff9-8cbb-d6c59eb69b15

JOHN ELLIOTT
September 18, 2023

42

1      Q    -- was before?

2      A    I don't remember exactly.  I'm sorry.  I

3   don't remember exactly.

4      Q    Okay.  Thank you.  We're having a little

5   tussle there.

6           Now, it appears to be a complaint about

7   Mr. Toth.  Is that fair to say?

8      A    Yeah.  That's what -- that's what Dre is

9   positing here.

10     Q    And do you remember what he -- what

11  problems he had with Mr. Toth?

12     A    Okay.  So the issue was -- as I recall,

13  there was a -- there was an employee that worked for

14  Jason Toth in a position that had been bargained in

15  a bargained-for.  And, yeah, like look at Number 1

16  right there.  Jason requested a new position and

17  moving bargained-for work.  That's what I remember.

18          I remember Dre was saying that Jason

19  shouldn't move this person out of a bargained-for

20  position into a non-bargained-for position.  I

21  remember that.

22          Now, this John Rudy, Mr. Rudy, AFSCME,

23  don't recall that one.  Not disputing it, just don't

24  recall it.

25          Number 3, contacted a CWA bargaining

Electronically signed by Teri  Genovese (001-142-143-1430)          44ed0520-5982-4ff9-8cbb-d6c59eb69b15

JOHN ELLIOTT
September 18, 2023

43

1    member and president after a negotiations session to

2    demand a reason for them not agreeing to proposals.

3    Not sure about that.

4              Number 4, I'm not sure about that one

5    either.

6              Number 1, I definitely remember.

7         Q    Okay.

8         A    The other three I'm not disputing; I just

9    don't remember.

10        Q    Okay.  Do you agree that what -- the

11   allegation in Number 1 there, do you agree that that

12   was an issue?

13        A    Yeah.  I didn't -- I didn't dispute Dre's

14   position on that.  Dre, I believe, was trying to

15   coach Jason Toth in good faith about the risk

16   involved in moving a bargained-for employee -- I

17   mean, a bargain -- a person -- an employee in a

18   bargained-for position into a non-bargained-for

19   position.

20             Jason disagreed with Dre.  They were not

21   in agreement.  So Dre had a position on it.  Jason

22   Toth did not agree that it was a problem.  And we

23   had a conversation about it.  And I do remember that

24   conversation.

25        Q    What did that conversation entail?

Electronically signed by Teri  Genovese (001-142-143-1430)                    44ed0520-5982-4ff9-8cbb-d6c59eb69b15

JOHN ELLIOTT
September 18, 2023

44

1       A    It entailed Jason Toth disagreeing with

2   Dre about moving this person out of a bargained-for

3   position, out of a bargained-for position into a

4   non-bargained-for position.  The conversation

5   entailed a debate.  Those two were debating.  Jason

6   Toth saying, no, we can do it; we should be able to

7   do it; it's within our right to do it.  Dre was

8   saying, no, we shouldn't do it.  You know, and I

9   advised us not to do it, so that's what I remember.

10      Q    So is there -- back up.

11           So did you feel that it was appropriate

12  that Drew -- or Dre sent this e-mail?

13      A    I don't -- I don't know that it was -- I

14  don't know that it was inappropriate.  It gave us an

15  impression that Dre was manufacturing a retaliation

16  claim.  'Cause -- and that was just an impression

17  that we got.

18      Q    In retaliation for what?

19      A    So we felt like, you know, Dre was putting

20  forward, you know, a document like this and so that

21  if he did get discharged, he could say, look, I sent

22  this e-mail, I sent this documentation, and they

23  fired me.  See what happened; they retaliated

24  against me.

25           That was just an impression that Bethany

Electronically signed by Teri Genovese (001-142-143-1430)                    44ed0520-5982-4ff9-8cbb-d6c59eb69b15

JOHN ELLIOTT
September 18, 2023

45

1    and myself got and Matt got from, you know, this

2    type of an e-mail.  But I'm not -- I'm not trying

3    to -- you asked me if it was inappropriate.  No, I

4    don't think any -- you know, I don't know it was

5    inappropriate or not.  But the motive we just -- we

6    were questioning, I guess.

7        Q    Okay.  But you just testified that there

8    was an honest disagreement between the two, correct?

9        A    That was on Item Number 1, correct.

10       Q    Uh-huh.

11       A    On Items 2, 3, and 4, you know, I don't

12   remember all of those and the facts and

13   circumstances of those three.

14       Q    So you don't think that he complained

15   legitimately that Jason Toth was creating a new

16   position and moving bargained-for work out of the

17   CWA?

18               MR. PIERSALL:  Objection as to form.

19       Go ahead, John.

20       A    No.  I think Dre had a -- was trying to,

21   in that particular instance, act in good faith.  But

22   I think his follow up on all of this and this

23   document, I'm just telling you the impression that

24   it gave us.

25       Q    Okay.  By "us," who do you mean?

Electronically signed by Teri Genovese (001-142-143-1430)                    44ed0520-5982-4ff9-8cbb-d6c59eb69b15

JOHN ELLIOTT
September 18, 2023

46

```
 1        A    Myself, Bethany Ziviski, and I believe
 2   Matt Schroeder as well.
 3        Q    Okay.  And did you three have a discussion
 4   about this all together or separately?
 5        A    I don't -- I don't remember.
 6        Q    Okay.  But you had a conversation with
 7   Bethany about it; is that correct?
 8        A    I believe so.
 9        Q    Do you recall what the gist of that
10   conversation was?
11        A    No.  I don't remember all of the details,
12   but I just remember that Bethany and I had an
13   impression that Dre was creating a retaliation claim
14   that really didn't exist.
15        Q    What gave you that impression?
16        A    Like this e-mail right here.  And, you
17   know, the -- we just felt like he knew that he was
18   underperforming.  He knew that when Bethany got
19   there, she started asking lots of questions, and she
20   started digging for information and looking for
21   answers and wasn't getting good information and data
22   and feedback and updates, and we felt like he knew
23   that his employment might be in jeopardy.  It's just
24   an impression, you know, that we had, but --
25        Q    Do you recall any conversation you had
```

Electronically signed by Teri  Genovese (001-142-143-1430)                    44ed0520-5982-4ff9-8cbb-d6c59eb69b15

JOHN ELLIOTT
September 18, 2023

47

1    with Matt Schroeder about that?

2       A    Every conversation I had with Matt, he was

3    frustrated with Dre, frustrated with the lack of

4    union, management.

5       Q    But did you talk about this e-mail in

6    particular?

7       A    I don't know if we talked about the e-mail

8    in particular or when, but I remember he was

9    definitely involved in the Number 1 incident.  Maybe

10   the others, but definitely the Number 1.

11      Q    So he brought to your attention a

12   legitimate concern at least with respect to

13   Number 1?

14      A    Yeah.

15      Q    And you thought that was a setup for

16   retaliation?

17      A    No.  I think the way he put this e-mail

18   together and then Items 2, 3, and 4, it just kind of

19   gave -- it just gave us that impression.

20      Q    So did you ever look into Number 2?

21      A    I don't remember.  By this time in

22   January, Bethany Ziviski is going to be employed and

23   it would be her role and her job to be looking into

24   these -- these matters.

25      Q    Did Bethany talk to you about Number 2?

Electronically signed by Teri Genovese (001-142-143-1430)                    44ed0520-5982-4ff9-8cbb-d6c59eb69b15

JOHN ELLIOTT
September 18, 2023

48

1      A    I don't -- I don't remember.  Bethany and
2  I -- I'm sorry.  I just don't remember, you know,
3  the John Rudy.  I just don't remember that name.
4      Q    What about Number 3, Jason Toth directly
5  contacted a CWA bargaining member and president
6  after a negotiations session to demand a reason for
7  them not agreeing to proposals for his department.
8  Does that ring a bell?
9      A    You know, he sent them -- you know, he
10  sent an e-mail to President Postel on this.
11      Q    Did you have a conversation with
12  President Postel about this?
13      A    No.  No.
14      Q    Did you have a conversation with Bethany
15  about this?
16      A    Not -- not that I remember.  Not that I
17  remember.
18      Q    And what about Number 4, Jason requested
19  to create job postings for two tentatively agreed
20  job classifications.  Do you recall anything about
21  that?
22      A    No.  I'm not disputing it.  I just don't
23  recall it.
24      Q    Okay.  Do you recall discussing any of it
25  with Bethany Ziviski?

Electronically signed by Teri  Genovese (001-142-143-1430)                                           44ed0520-5982-4ff9-8cbb-d6c59eb69b15

JOHN ELLIOTT
September 18, 2023

49

1      A    With Beth Ziviski?  Not specifically.  I

2   don't remember John Rudy coming up in a conversation

3   with Beth Ziviski, or I don't remember talking to

4   Beth Ziviski about air quality technicians.  I just

5   don't remember the specificity there.

6      Q    Are you aware that Dre had been charged

7   with a crime regarding his laptop?

8      A    I am aware of that.

9      Q    And were you aware of it at the time it

10  was an issue?

11     A    I heard about it after the fact.

12     Q    Did you have anything to do with the

13  arrest?

14     A    I didn't have anything to do with the

15  arrest.

16     Q    Did you have anything to do with

17  proffering charges?

18     A    No.  I didn't file charges.  Charles Jake

19  filed the charges, I believe.  He's the one that

20  ordered and instructed his arrest.

21     Q    Okay.  Do you know anything about this

22  arrest?

23     A    Do I know anything about what now?

24     Q    The arrest.

25     A    I know that he was arrested, but I don't

Electronically signed by Teri Genovese (001-142-143-1430)                    44ed0520-5982-4ff9-8cbb-d6c59eb69b15

JOHN ELLIOTT
September 18, 2023

                                                          50

1   know anything beyond that.  He was arrested by,

2   I believe, the University of Toledo Police

3   Department.  I think Jeff Newton arrested him or one

4   of the officers with the campus police.

5        Q    And who is Jeff Newton?

6        A    He's the chief of -- he was the chief of

7   police.  I think he's retired now.  I think his name

8   is Jeff.

9        Q    Chief of --

10       A    Police.

11       Q    -- university police or city police?

12       A    University of Toledo.

13       Q    Okay.

14       A    Newton was his last name.  I think he was

15  Jeff.  But Newton was his last name.

16       Q    Okay.  Did Dre at any point complain to --

17  not complain to you, but make you aware that there

18  were people who were complaining of discrimination?

19       A    Did Dre tell me people were complaining of

20  discrimination?

21       Q    Yes.

22       A    I don't think so.

23       Q    Okay.

24       A    It's possible, you know, but --

25       Q    Well, if he did, what would you have done

Genovese & Reno
(419)249-2705

JOHN ELLIOTT
September 18, 2023

51

1   about it?

2                MR. PIERSALL:  Objection as to form,

3        but go ahead, John.

4        A    Well, you know, Dre had a compliance role

5   in his title, so if someone were to complain, you

6   know, through the compliance or employee relations

7   about discrimination, I would -- and he told me

8   about it, I would expect that he would look into it

9   and do his due diligence to investigate and gather

10  facts and make a determination.

11       Q    So you're saying that if someone had -- if

12  an employee had complained to Dre about

13  discrimination, it was Dre's job to investigate and

14  do due diligence?

15       A    Due diligence, yeah.  Due diligence.  You

16  know, he's employee relations and I guess, you know,

17  it depends on if the person is a union.  You know,

18  if they're a union person and they're complaining of

19  that, you know, there, I believe, are union

20  procedures and rules for investigating that, you

21  know, he would follow and maybe work with the union

22  rep to get access, to ask questions and investigate.

23                If it's a nonunion person, he would, you

24  know, want to meet with the manager or supervisor,

25  maybe the employee, ask questions, gather facts,

Electronically signed by Teri Genovese (001-142-143-1430)                    44ed0520-5982-4ff9-8cbb-d6c59eb69b15

JOHN ELLIOTT
September 18, 2023

52

1   what happened, what were the circumstances, when,

2   who was present, show me anything in writing.  You

3   know, that would be what would be expected of a

4   director.

5        Q    Okay.  Who is Lisa Simpson, if you know?

6        A    Lisa Simpson is the -- was Dre's

7   replacement.

8        Q    Okay.  And I hope to -- okay.  I lost it.

9             (Whereupon, Plaintiff's Exhibit 22

10            was marked for identification.)

11       Q    Can you see the exhibit that is up right

12   now, Exhibit 22?

13       A    Yeah.  I see the first paragraph in the

14   offer letter.  Yeah, that's coming up.

15       Q    Okay.  What is this document?

16       A    It's an offer letter for Lisa Simpson.

17       Q    Okay.  And is that your signature at the

18   bottom of the offer letter?

19       A    Yes.

20       Q    So you made the offer, correct?

21       A    No, I didn't make the offer.  I think

22   Bethany made it, but I signed it and that's -- and I

23   approved of it.

24       Q    Okay.  And now, Lisa, I believe Lisa had

25   been employed previous to this position at UT; is

Electronically signed by Teri  Genovese (001-142-143-1430)                                   44ed0520-5982-4ff9-8cbb-d6c59eb69b15

JOHN ELLIOTT
September 18, 2023

53

1   that correct?

2       A    That is correct.

3       Q    And do you remember what her position was?

4       A    I don't.

5       Q    Okay.  And it looks here in the first

6   paragraph that her annual salary was $110,000; is

7   that correct?

8       A    Yeah.

9       Q    Do you know --

10      A    Yes.

11      Q    Do you know how much Dre was making when

12  he was terminated?

13      A    I'm not sure.

14      Q    Okay.  Was it $110,000?

15      A    I don't think so.  I think it was less.

16      Q    Do you think it was more or less?

17      A    I think it was less.

18      Q    Okay.  So why did Lisa get $110,000

19  salary?

20      A    Because that's what she demanded.  She was

21  being recruited, and she wasn't going to come for

22  less than that.  I don't know where she was working

23  or exactly what she was doing, but she had a job and

24  she wasn't going to leave that job to come to this

25  job unless she got an increase in pay, and she was

Electronically signed by Teri Genovese (001-142-143-1430)          44ed0520-5982-4ff9-8cbb-d6c59eb69b15

JOHN ELLIOTT
September 18, 2023

54

1   known to the staff and I believe to Bethany from

2   prior work and they knew that she would be good at

3   that job and so they wanted to hire her.  And so I

4   approved the hire.

5              MS. SHARKEY:  Okay.  I'm going to

6         take a brief break here, maybe about five

7         minutes, and then we can come back.

8              MR. PIERSALL:  Okay.

9              MS. SHARKEY:  Okay.  Thank you.

10             (Whereupon, a recess was taken at

11        5:17 p.m. and resumed at 5:28 p.m.)

12             MS. SHARKEY:  Okay.  Just a few more

13        questions, Mr. Elliott.

14             (Whereupon, a discussion was held off

15        the record.)

16  BY MS. SHARKEY:

17    Q    Now, I'm sorry, when did Beth Ziviski take

18  the executive directorship of labor and employment

19  relations or whatever the title --

20    A    January of '21.

21    Q    Did you hire her?

22    A    I did.

23    Q    Okay.  Was her job posted?

24    A    I believe so.

25    Q    Did you interview anyone but Beth for the

Electronically signed by Teri  Genovese (001-142-143-1430)                                        44ed0520-5982-4ff9-8cbb-d6c59eb69b15

JOHN ELLIOTT
September 18, 2023

55

1    position?

2        A    No.  We interviewed several people.  There

3    were several applicants.

4        Q    Including Dre, right?

5        A    That's right.

6        Q    Okay.  Now, I have Beth saying that her

7    application was a super secret application.  Do you

8    know anything about that?

9              MR. PIERSALL:  Objection as to form.

10       A    I'm sorry.

11             MR. PIERSALL:  Go ahead, John.

12       A    I'm sorry.  Did you say it was now --

13   describe that again, a super what?

14       Q    Super secret application.

15             MR. PIERSALL:  Same objection.

16       A    Let me -- there was -- she was a

17   candidate.  Dre was a candidate.  We had, I think, a

18   couple more applicants, so I don't know what the

19   secret would have been.

20       Q    Did you speak with Beth at all before she

21   filed her application?

22       A    Yes.

23       Q    And what was that conversation about?

24       A    When I first got there, I asked for people

25   who had worked previously in HR that we may want to

Electronically signed by Teri Genovese (001-142-143-1430)                    44ed0520-5982-4ff9-8cbb-d6c59eb69b15

JOHN ELLIOTT
September 18, 2023

56

1    come back, and she was a name that was given to me.

2    I called a lot of people, and she was one of them to

3    gauge interest about maybe coming back to U Toledo.

4    There were a lot of vacancies and a lot of people

5    had left.

6            And so that's the context, and the

7    conversation was -- with everyone, would you

8    consider coming back, and that was the nature of it.

9        Q    Okay.

10       A    I was trying to get applicants.  Yeah.

11       Q    You said you made inquiry regarding who on

12   the staff or former staff might come back?

13       A    Yeah.

14       Q    Who did you make that inquiry of?

15       A    Let's see.  I remember Lisa Simpson was

16   someone.  There had been -- there was a person that

17   had left.  I think his name was Dan, and he had gone

18   to Bowling Green.  I called him to see if he might

19   be interested.

20           There was another person that had been

21   doing -- I wish I remembered these names, but that

22   had been doing FMLA processing, and I called him to

23   see if he might be interested in coming back.

24           There was a guy over at ProMedica that had

25   left and had went to work at ProMedica, and his name

Electronically signed by Teri  Genovese (001-142-143-1430)

JOHN ELLIOTT
September 18, 2023

57

1   was Brian.  I called him.  I just -- you know, I

2   called different people to see if there might be an

3   interest in coming back to the university, and

4   Bethany was one of them.

5        Q    Okay.  Now, your goal in calling them

6   before -- was this before the posting or after the

7   posting?

8        A    When I first got there, I don't -- I don't

9   remember what was posted or what wasn't posted, but

10  I was -- we had a large number of vacant positions,

11  and we were finding it very hard to run the

12  university human resources department.

13            And so I was -- you know, I was

14  recruiting.  I was trying to find people that might

15  be interested in coming back that had left

16  previously.  And I don't know what was posted when,

17  but that was what my strategy was.  You know, one of

18  my tactics was to call people and see if they might

19  have an interest in coming -- returning to the

20  university.

21       Q    Do you recall when Lisa Simpson left?

22       A    I don't remember.  No, ma'am.  I don't

23  remember when she left originally.

24       Q    Okay.  And was -- when you called her to

25  talk about coming back to the university, in what

Electronically signed by Teri Genovese (001-142-143-1430)          44ed0520-5982-4ff9-8cbb-d6c59eb69b15

JOHN ELLIOTT
September 18, 2023

58

1   capacity did you discuss?

2       A    I don't think initially I discussed a

3   capacity, and I don't think she was -- I don't think

4   she was interested at first.  I don't think -- in

5   our initial conversation, I think she was happy

6   where she was.  I don't think she was interested in

7   coming back at that time.

8            And then it wasn't until probably, I don't

9   know, four, five, six months later that I guess she

10  changed her mind when Dre's position became vacant.

11      Q    Is the person you identified as Dan, would

12  that be Dan Powell?

13      A    I think so, yes.  That sounds right.

14      Q    And was he offered a position?

15      A    He was.

16      Q    And what position was that?

17      A    I think it was the director position.

18      Q    Okay.  And did he refuse that position?

19      A    He ultimately did.

20      Q    What do you mean by "ultimately"?

21      A    I think originally -- I think he accepted

22  it, and then I think when he went to his employer

23  and said I'm leaving, I think they made him a

24  counterproposal and enticed him to stay.

25                MS. SHARKEY:  Okay.  All right.  I

Electronically signed by Teri Genovese (001-142-143-1430)                                    44ed0520-5982-4ff9-8cbb-d6c59eb69b15

JOHN ELLIOTT
September 18, 2023

59

1      have nothing further.  I thank you very

2      much for your time.

3            THE WITNESS:  Thank you.

4            MR. PIERSALL:  John, you have an

5      opportunity to read your deposition.  You

6      can chose to exercise that right if you

7      want to.  I think you know the drill.

8            THE WITNESS:  Sure.  Send it to me in

9      case I need to correct anything or

10     clarify, but, yeah, please.

11           MR. PIERSALL:  All right.  Teri, John

12     will read.

13           (Whereupon, the deposition was

14     concluded at 5:36 p.m.)

15                - - -

16

17

18                    _____

19                    JOHN G. ELLIOTT

20

21

22

23

24

25

Genovese & Reno
(419)249-2705

Electronically signed by Teri Genovese (001-142-143-1430)                                    44ed0520-5982-4ff9-8cbb-d6c59eb69b15

JOHN ELLIOTT
September 18, 2023

60

2          C-E-R-T-I-F-I-C-A-T-E

4          I, Teresa Genovese Mauro, a Notary Public in
and for the State of Ohio, duly commissioned and
5     qualified, do hereby certify that the within-named
Witness, JOHN G. ELLIOTT, was by me first duly sworn
6     to tell the truth, the whole truth and nothing but
the truth in the cause aforesaid; that the testimony
7     then given by him was by me reduced to stenotype in
the presence of said Witness, afterwards transcribed
8     upon a computer; that the foregoing is a true and
correct transcription of the testimony so given by
9     him as aforesaid.

11          I do further certify that this deposition was
taken at the time and place in the foregoing caption
12    specified and was completed without adjournment.

14          I do further certify that I am not a relative,
employee of or attorney for any of the parties in
15    the above-captioned action; I am not a relative or
employee of an attorney of any of the parties in the
16    above-captioned action; I am not financially
interested in the action; I am not, nor is the court
17    reporting firm with which I am affiliated, under a
contract as defined in Civil Rule 28(D).

19          IN WITNESS WHEREOF, I have hereunto set my hand
and affixed my seal of office at Toledo, Ohio, on
20    this 5th day of November, 2023.

                                   TERESA GENOVESE MAURO
23    My Commission expires              Notary Public
June 8, 2028.              in and for the State of Ohio

Genovese & Reno
(419)249-2705

JOHN ELLIOTT
September 18, 2023

61

**A**

**able** 8:10 28:13
44:6
**Abood** 4:3 5:9,10
**above-captioned**
60:15,16
**acceptable** 25:15
**accepted** 8:8
58:21
**access** 51:22
**accurately** 40:5
**accusation** 21:12
**accused** 21:7,17
**act** 45:21
**action** 27:11,15
29:9,11,19
32:15 60:15,16
60:16
**activities** 8:22
**added** 17:11
**addition** 36:18
**adjournment**
60:12
**admin** 21:10
22:14
**administering**
5:6
**administration**
41:5
**advised** 44:9
**affidavit** 9:15,16
9:23,25 10:13
13:8
**affiliated** 60:17
**affixed** 60:19
**aforesaid** 60:6,9
**AFSCME** 16:1
20:18,19,21,23
42:22
**afternoon** 4:16
5:12
**ago** 12:3 27:2
**agree** 5:4 8:14
19:24 20:3

31:24 36:14
43:10,11,22
**agreed** 20:16
33:18 39:10
48:19
**agreeing** 43:2
48:7
**agreement** 8:14
20:16 38:16
43:21
**agreements** 40:10
**ahead** 13:6 14:1
18:3 23:11 30:8
31:19 45:19
51:3 55:11
**air** 49:4
**Alabama** 8:18
**allegation** 18:20
20:25 21:4,11
43:11
**allegations** 19:1,5
**allegedly** 36:8
**allow** 40:2
**allowance** 7:21
7:22
**and/or** 39:5
**annual** 7:15 53:6
**answer** 40:5
**answers** 46:21
**anyway** 30:8
**apparently** 20:22
**APPEARANC...**
4:1
**appears** 42:6
**applicable** 30:3
**applicants** 55:3
55:18 56:10
**application** 38:25
55:7,7,14,21
**appointment**
22:24
**appreciate** 31:20
**appropriate**
44:11

**approval** 40:7
**approve** 38:5
**approved** 22:16
22:17 35:13
36:5,9 38:19
40:11,12 52:23
54:4
**area** 11:1 16:25
**arrangement**
39:15,22
**arrangements**
39:20
**arrest** 49:13,15
49:20,22,24
**arrested** 49:25
50:1,3
**arrive** 27:16
**arrived** 27:19
**asked** 10:1,5 21:6
21:16 45:3
55:24
**asking** 6:10 27:1
36:13,20 46:19
**asks** 35:23
**assessment** 27:16
27:18
**assist** 12:10
**assistant** 21:5,7
21:15,18
**associate** 4:9 41:4
**assume** 17:15
**attending** 4:15
**attention** 47:11
**attorney** 60:14,15
**authority** 19:24
20:3
**Automate** 38:20
**automated** 38:22
**aware** 4:24 25:18
25:21,24 26:2
27:21 49:6,8,9
50:17

**B**

**back** 36:9 39:14
39:18 44:10
54:7 56:1,3,8,12
56:23 57:3,15
57:25 58:7
**background**
39:13
**backlogged** 28:11
**bargain** 43:17
**bargained** 42:14
**bargained-for**
18:23 42:15,17
42:19 43:16,18
44:2,3 45:16
**bargaining** 19:23
20:2,17,18
24:19 29:10,13
42:25 48:5
**basically** 8:20
23:3,7
**basis** 37:9
**Beck** 37:19
**behalf** 4:2,5 16:5
**behaviors** 14:19
**believe** 6:4,6 17:1
17:2 22:22
25:10 28:4,9
33:11 36:4
40:10,11 41:6
43:14 46:1,8
49:19 50:2
51:19 52:24
54:1,24
**bell** 16:13 48:8
**benefits** 8:24
**Beth** 26:5 49:1,3
49:4 54:17,25
55:6,20
**Bethany** 24:5,6,9
24:18 27:16,19
27:21 28:8,20
28:23 30:22
31:7 44:25 46:1
46:7,12,18

47:22,25 48:1
48:14,25 52:22
54:1 57:4
**beyond** 37:15
50:1
**binding** 5:6
**bit** 7:12 22:10
34:4
**board** 13:12
**Boiler** 41:13
**bottom** 14:17
22:10 34:5
52:18
**Bowling** 56:18
**break** 6:21,22
54:6
**Brian** 57:1
**brief** 54:6
**brought** 47:11
**budget** 33:9,20
34:2,14
**buildings** 41:8,9
41:9

**C**

**C** 4:8
**C-E-R-T-I-F-I-...**
60:2
**call** 24:9 57:18
**called** 39:22 56:2
56:18,22 57:1,2
57:24
**calling** 57:5
**campus** 4:10 50:4
**candidate** 55:17
55:17
**capacity** 37:2
58:1,3
**caption** 60:11
**case** 1:4 24:25
59:9
**cases** 29:17
**cause** 12:4 44:16
60:6

JOHN ELLIOTT
September 18, 2023

62

ceded 28:24
CEO 11:25
certain 34:1
certainly 34:13
certified 5:23
certify 60:5,11,14
change 31:16
changed 58:10
charge 8:21
charged 49:6
charges 49:17,18
   49:19
Charles 49:18
check 35:23,25
   36:3
checking 36:1
Cherry 10:22
   11:8,10 26:21
   37:19
chief 10:24 26:15
   26:19 50:6,6,9
chose 59:6
circumstances
   17:3 45:13 52:1
city 25:9,18 50:11
civil 22:25 60:17
claim 44:16 46:13
clarify 59:10
classifications
   48:20
classified 30:3
clear 12:11 15:6
Cleveland 25:9
   25:18,25
clock 35:15,16
coach 43:15
colleague 21:8,18
college 25:14,25
Columbus 4:7
come 10:22 11:24
   12:10 53:21,24
   54:7 56:1,12
coming 12:1
   39:14 40:22

49:2 52:14 56:3
   56:8,23 57:3,15
   57:19,25 58:7
Commission
   60:23
commissioned
   60:4
communication
   10:20 23:23,23
   24:2,14,16,17
   24:24,25 26:5
   26:20,23 27:23
   28:2 30:20 31:3
communications
   26:7
community 25:13
   25:25
compensation
   8:23
competent 11:1
   12:9 26:14
complain 11:15
   50:16,17 51:5
complained 11:6
   26:19 45:14
   51:12
complaining
   50:18,19 51:18
complaint 42:6
complaints 11:19
   26:6,22
completed 60:12
compliance 15:23
   16:12,15,23
   17:2,11 51:4,6
component 17:11
computer 60:8
computers 32:20
concern 31:15
   47:12
concerning 10:15
concerns 5:18
   10:18 27:14
concluded 59:14

conference 1:11
   5:7
conferencing
   4:15
conflict 19:7
consider 56:8
considered 29:12
consistency 39:19
consistent 23:1
contacted 42:25
   48:5
context 56:6
continue 8:6
continuing 39:7
contract 8:7
   20:19,21 33:13
   60:17
conversation
   24:1 43:23,24
   43:25 44:4 46:6
   46:10,25 47:2
   48:11,14 49:2
   55:23 56:7 58:5
conversations
   10:9 27:3
copied 39:3
correct 6:14 7:16
   7:19,25 9:17
   12:21 13:9
   14:11,14,24
   15:15 17:15
   23:5,9 25:20
   27:8 29:13 31:3
   35:20 39:2 45:8
   45:9 46:7 52:20
   53:1,2,7 59:9
   60:8
corrective 27:10
   27:15 29:9,11
   29:19 32:15
correctly 22:23
counsel 4:9 5:2
   5:17 27:11
counseled 28:1

28:24
counseling 28:18
counterproposal
   58:24
couple 12:3 28:21
   32:25 55:18
court 1:1 60:16
coverage 39:7
COVID 39:13
create 48:19
created 17:13,18
creating 45:15
   46:13
credibility 31:22
   32:4
crime 49:7
customers 10:15
CWA 16:1 17:23
   17:24 18:4,5,22
   18:23 19:8
   20:17,21,22
   33:2,3,5,12
   42:25 45:17
   48:5

——————
            D
——————
D 2:1
Dan 56:17 58:11
   58:12
data 28:13 46:21
date 1:13 4:19
   23:9 40:4
Davis 14:14,15
   15:6,8
day 41:17,21
   60:20
days 13:1 23:4,8
   23:13,16
deal 16:19
debate 44:5
debating 44:5
December 12:23
decide 30:21
decision 34:3

37:11 40:2
defendant 1:7 4:5
   5:14
defensively 21:7
   21:17
deficits 30:16,24
defined 60:17
definitely 21:20
   22:15 33:8 43:6
   47:9,10
delivered 24:5
demand 43:2
   48:6
demanded 53:20
demote 31:5
denied 37:9
   40:11
deny 37:11
department 39:5
   48:7 50:3 57:12
depends 51:17
depo 6:7
deposed 6:6
deposition 1:10
   2:2 4:21 59:5
   59:13 60:11
describe 55:13
describing 19:11
description 15:13
   17:17 36:11
descriptions
   36:12
details 46:11
determination
   51:10
detrimental
   18:15,18
develop 24:25
developed 39:21
different 15:24
   28:10 36:8,10
   57:2
difficult 25:14
digging 46:20

JOHN ELLIOTT
September 18, 2023

63

diligence 51:9,14
51:15,15
direct 20:19
directly 48:4
director 15:21
16:3 17:1,8
30:15,17,25
31:4,10 52:4
58:17
directorship
54:18
disagreed 43:20
disagreeing 44:1
disagreement
45:8
discharge 22:4,4
31:11
discharged 12:25
41:17 44:21
discipline 27:22
28:19,24 29:17
discrimination
50:18,20 51:7
51:13
discuss 58:1
discussed 30:22
31:5 58:2
discussing 48:24
discussion 46:3
54:14
dismissal 29:21
dispute 33:15
41:18 43:13
disputing 33:16
42:23 43:8
48:22
DISTRICT 1:1,1
DIVISION 1:2
divulge 10:8
DocRoute 38:24
document 7:4
9:14 14:5,8
15:18 17:14
22:3 29:8,16

32:21 34:23
35:1 38:22 40:2
40:18 44:20
45:23 52:15
documentation
10:21 19:16,17
19:21 44:22
documentations
19:14
documents 17:17
17:20 19:9
doing 16:24
23:14 28:21
37:23 53:23
56:21,22
dollars 33:24
Dr 8:9
Dre 5:10 10:15
11:24 12:1,19
13:2,15,17
15:20 16:24
17:5,6,11,18,22
18:7,8 19:7,15
20:16,24 21:5
21:13 22:8,19
23:17 24:5,10
26:9 27:11,13
28:12,24 29:12
29:22 30:4,23
32:22 35:2
37:18 39:1,3,24
41:15 42:8,18
43:14,20,21
44:2,7,12,15,19
45:20 46:13
47:3 49:6 50:16
50:19 51:4,12
53:11 55:4,17
Dre's 17:5 20:10
20:13 27:23
31:16 43:13
51:13 52:6
58:10
Drew 4:8 5:13

44:12
Dreyon 1:3 4:12
14:11 15:14
drill 59:7
due 31:21 35:16
51:9,14,15,15
duly 5:23 60:4,5
duties 8:20 14:24
15:18 16:8,9,10
16:16 41:6
duty 16:7

E
E 2:1 29:15 30:2
e-mail 33:15 35:6
35:7,10 41:14
44:12,22 45:2
46:16 47:5,7,17
48:10
E1 29:17
early 8:4
effect 39:23 40:3
either 43:5
electricians 41:11
Elliott 1:11 2:2
4:21 5:19,22
6:3 7:8 21:6,16
54:13 59:18
60:5
Elliott's 21:7,17
employed 15:2
23:3,7 47:22
52:25
employee 13:15
13:17 21:6,16
22:6,7 29:13,18
30:18,21 42:13
43:16,17 51:6
51:12,16,25
60:14,15
employees 29:10
30:3 39:14
employer 58:22
employers 35:16

employment 7:25
8:23 22:5 23:15
25:18 31:11,14
46:23 54:18
engaged 27:22
ensure 39:6
entail 43:25
entailed 44:1,5
enter 37:11 38:2
entered 37:13
38:3
enticed 58:24
enunciate 4:23
Erie 1:20
essence 23:25
27:4
etched 30:7,9
evaluation 31:14
31:22,24
everybody 37:5
exactly 15:5
24:13 42:2,3
53:23
Examination 2:4
6:1
exceeding 31:25
32:1
exceeds 14:22,23
15:7 31:14
exception 34:1
executive 54:18
executives 11:21
26:16
exempt 36:24
37:15,22 38:5,6
exercise 59:6
exhibit 7:2 9:9,10
14:1,3 15:9,10
21:23 22:1 29:3
29:4 32:9,11
34:16,19 38:8
38:10 40:13,15
52:9,11,12
Exhibits 2:7

exist 39:16 46:14
expect 51:8
expected 52:3
expires 60:23
extra 37:6

F
facilities 41:1,2,3
41:7
fact 19:17 25:8
25:22,24 49:11
facts 18:15,18
25:3 45:12
51:10,25
faculty 25:13
fair 35:9 42:7
faith 43:15 45:21
false 21:8,12,18
familiar 18:4
38:23
far 17:10
feedback 10:14
10:23 12:1 34:6
34:9,12 46:22
feel 30:11 44:11
felt 44:19 46:17
46:22
file 49:18
filed 49:19 55:21
final 21:3,4 23:8
31:13
finance 34:3,15
financially 60:16
find 31:11 57:14
finding 57:11
fine 17:21
finish 6:9
fired 44:23
firm 5:13 60:17
first 5:23 12:22
13:1 14:18 27:7
28:21 39:24
52:13 53:5
55:24 57:8 58:4

JOHN ELLIOTT
September 18, 2023

64

60:5
**five** 54:6 58:9
**flexible** 38:16
  39:15,20,22
  40:9
**FMLA** 56:22
**folks** 41:12
**follow** 29:16,18
  45:22 51:21
**follow-through**
  24:16
**follow-up** 10:20
  24:16 26:24
**follows** 5:24
**foregoing** 60:8,11
**form** 23:10 31:18
  45:18 51:2 55:9
**formal** 27:22,24
**formally** 28:23
**former** 56:12
**forward** 44:20
**found** 10:13,25
**four** 17:19 58:9
**frame** 12:24
**frequently** 14:22
  14:23 15:7
  31:14
**frustrated** 24:21
  26:6 47:3,3
**full-time** 25:11
  25:11,12
**functions** 8:22
**further** 59:1
  60:11,14

### G

**G** 1:11 2:2 5:22
  59:18 60:5
**gather** 51:9,25
**gauge** 56:3
**general** 4:9 14:18
**generally** 15:17
  30:6
**Genovese** 1:15,19

4:17 60:4,22
**getting** 11:25
  46:21
**gist** 12:4,6 46:9
**give** 6:12 23:2
  26:18 28:5
  33:11,12 39:12
**given** 31:13 41:20
  56:1 60:7,8
**gives** 22:19
**giving** 12:3 23:25
  27:3 31:21
**go** 6:7 13:6 18:3
  23:11 30:8,11
  31:19 34:25
  40:21 45:19
  51:3 55:11
**goal** 57:5
**goes** 19:13
**going** 4:22 6:7
  8:10,13 9:19
  22:9 25:14 29:3
  29:15 31:1,1,16
  32:8 37:3,7,17
  37:22,23 38:5
  39:25 40:13
  47:22 53:21,24
  54:5
**good** 4:16 5:12
  26:13 32:2,3,6
  43:15 45:21
  46:21 54:2
**granted** 36:20,21
**Green** 56:18
**grievance** 18:14
  18:17,19
**grievances** 10:21
  24:19 28:9,10
**guess** 16:18 21:15
  23:13 45:6
  51:16 58:9
**guessing** 13:22
**guy** 41:1 56:24

### H

**Hall** 4:10
**hand** 60:19
**Hang** 32:16
  34:24
**haphazardly**
  39:17
**happened** 39:12
  44:23 52:1
**happy** 19:10 58:5
**hard** 14:5 57:11
**health** 33:13
**heard** 27:7 49:11
**hearing** 19:14,16
  19:18
**held** 15:7 54:14
**help** 40:5
**helpful** 26:13
**helping** 16:4
**helps** 25:23 35:7
**hereinafter** 5:23
**hereunto** 60:19
**Hi** 6:5,6
**High** 4:7
**hire** 54:3,4,21
**hired** 17:12,16,19
**honest** 45:8
**hope** 52:8
**hopefully** 6:20
  10:10 34:18
**hospital** 10:25
  11:21 26:16
**hour** 36:25
**hourly** 36:25
**hours** 6:19 37:2,6
  37:16,21 38:7
**housing** 7:21,22
**HR** 15:22 16:12
  16:15,22 17:1
  17:11 26:17
  35:14 37:21,24
  40:10 55:25
**HRIS** 8:24
**human** 8:21

57:12
**Huron** 4:3
**Hurst** 9:3

### I

**idea** 28:6
**identification** 7:3
  9:11 14:4 15:11
  21:24 29:5
  32:12 34:17
  38:9 40:16
  52:10
**identified** 58:11
**identify** 5:3
**impact** 33:9,20
**importance**
  37:17
**important** 27:17
**impression** 44:15
  44:16,25 45:23
  46:13,15,24
  47:19
**in-house** 5:17
**inappropriate**
  44:14 45:3,5
**incident** 21:9
  35:4 47:9
**includes** 8:23
**Including** 55:4
**increase** 53:25
**independent** 35:6
**indicated** 23:21
**indicates** 7:24
  30:2
**individuals** 37:1
**information**
  24:18,20 28:13
  36:22 46:20,21
**initial** 58:5
**initially** 58:2
**input** 40:1
**inquiry** 56:11,14
**instance** 45:21
**instructed** 49:20

**insurance** 33:13
**interest** 56:3 57:3
  57:19
**interested** 25:2,3
  56:19,23 57:15
  58:4,6 60:16
**internal** 10:15
  26:17
**interpreting**
  17:17,20
**interview** 54:25
**interviewed** 55:2
**introduced** 19:17
**investigate** 51:9
  51:13,22
**investigating**
  51:20
**involved** 9:1
  43:16 47:9
**involvement**
  20:10,13
**involving** 29:17
**issue** 17:23 24:17
  31:22 33:4,6
  42:12 43:12
  49:10
**issued** 18:14,17
**issues** 11:9 12:15
  12:20 13:3
  30:20,25 31:3,9
  31:12
**Item** 45:9
**Items** 45:11
  47:18

### J

**Jake** 49:18
**Janelle** 4:11 5:16
  10:1
**January** 12:25
  27:20,20 32:22
  40:5 41:16
  47:22 54:20
**Jason** 10:24

JOHN ELLIOTT
September 18, 2023

18:22 37:19
40:24,25 41:1
41:12 42:14,16
42:18 43:15,20
43:21 44:1,5
45:15 48:4,18
**Jeff** 50:3,5,8,15
**Jennifer** 10:22
11:8,10 26:21
37:18
**jeopardy** 46:23
**job** 8:9,20 14:23
15:13,17 17:5,5
17:7,17,19
18:23 25:11
36:11,11,25
41:3 47:23
48:19,20 51:13
53:23,24,25
54:3,23
**jobs** 25:12 36:8
36:10
**John** 1:11 2:2
4:21 5:22 7:8
10:7 11:25
23:11 29:25
31:19 42:22
45:19 48:3 49:2
51:3 55:11 59:4
59:11,18 60:5
**Judge** 1:5
**juggle** 25:12
**jumping** 14:1
**June** 60:23

_____

**K**

**K** 4:4
**kept** 10:21
**kicked** 34:14
**kind** 41:3,13
47:18
**Knepp** 1:5
**knew** 36:9 46:17
46:18,22 54:2

**know** 6:17,21 7:4
8:8,10,23 9:14
10:22 11:5,24
12:8,8,22,23
13:20 14:8
15:12 16:23,24
17:6,10 18:1
24:15 25:4,5,8,9
25:10,13 28:1
28:15,21,23
30:15,18,23
31:2,9,23,24
32:7 33:19,20
33:21,23,24,25
34:23,25 35:11
35:18,19,21
36:1,7,16,22
37:3,13,20,21
38:21 41:8,12
41:22,24,25
44:8,13,14,19
44:20 45:1,4,4
45:11 46:17,24
47:7 48:2,9,9
49:21,23,25
50:1,24 51:4,6
51:16,16,17,19
51:21,24 52:3,5
53:9,11,22 55:8
55:18 57:1,13
57:16,17 58:9
59:7
**knowing** 36:7
**knowledge** 19:4
24:23
**known** 54:1
**knows** 26:14

_____

**L**

**labor** 8:24 11:1
11:23 12:15
13:3 15:21 16:3
16:19 17:7
54:18

**labor/employee**
15:22 16:15
17:8
**lack** 24:15,24,25
26:23,23,24,24
28:2 29:23
37:10 47:3
**lacked** 19:24 20:3
**language** 33:13
**laptop** 49:7
**large** 57:10
**law** 4:3 5:9,13
**leaders** 37:19,20
39:18
**leave** 8:4 53:24
**leaving** 58:23
**left** 17:2 28:15
56:5,17,25
57:15,21,23
**legal** 10:4,9
**legitimate** 47:12
**legitimately**
45:15
**Let's** 14:22 56:15
**letter** 7:6,7,9
20:16 22:4,5,13
22:17 23:17
24:8 25:19 26:1
26:3 52:14,16
52:18
**level** 25:15 30:25
36:24 37:15
38:5,7
**lieutenant** 26:15
**lines** 30:17
**Lisa** 52:5,6,16,24
52:24 53:18
56:15 57:21
**little** 7:12 22:10
34:4 39:13 42:4
**long** 13:20
**longer** 6:20
**look** 10:12 19:10
42:15 44:21

47:20 51:8
**looking** 13:7,8
14:17 15:9
18:25 21:5,15
46:20 47:23
**looks** 7:6 14:9,12
14:13,15 15:14
17:4,13,15,18
33:2,3,10,11
35:2 38:18
39:23,24 53:5
**lost** 52:8
**lot** 28:10 38:7
56:2,4,4
**lots** 46:19

_____

**M**

**M** 4:11
**ma'am** 12:18
20:11 38:14
40:21 57:22
**Main** 4:10
**maintained** 41:10
**making** 8:11 21:8
21:18 53:11
**manage** 16:4
**managed** 39:17
**management**
19:13,15,17,20
30:19 35:14
36:24 37:2,5,14
37:22 38:6,7
47:4
**manager** 36:23
51:24
**managing** 11:1
**manner** 28:14
**manufacturing**
44:15
**March** 14:6
17:16
**marked** 7:3 9:11
14:4 15:11
21:24,25 29:5

32:12 34:17
38:9 40:16
52:10
**masters** 25:16
**Matt** 8:9 33:8
34:2,14 35:24
35:25 36:2 45:1
46:2 47:1,2
**matter** 5:15
28:17
**matters** 47:24
**Mauro** 1:15 4:17
60:4,22
**mean** 10:3 14:21
18:4 21:20
22:20 23:19
26:3 33:22
34:24 35:7
43:17 45:25
58:20
**means** 16:23
**meet** 51:24
**meeting** 11:20,22
12:13
**meetings** 10:19
11:3,4,7,13,18
**Melissa** 9:3
**member** 20:17
25:13 43:1 48:5
**memorandum**
19:23 20:2,3
**memory** 19:10
**mention** 5:20
**met** 6:3
**microphone** 4:24
**middle** 10:13
**million** 33:23
**mind** 37:13,25
38:2,4 58:10
**minute** 32:24
**minutes** 54:7
**misstated** 18:14
**misstating** 18:18
**mistake** 30:5

JOHN ELLIOTT
September 18, 2023

66

**Monday** 1:13
**Monica** 10:24
  11:8,14 26:21
**month** 7:23
**months** 17:19
  25:4 58:9
**motivation** 12:12
**motive** 45:5
**MOUs** 20:6,7
**move** 8:11 31:10
  32:8 42:19
**moving** 42:17
  43:16 44:2
  45:16
**multiple** 35:16

**N**

**N** 1:20 2:1 4:3
**name** 4:17 5:13
  6:4 17:3 48:3
  50:7,14,15 56:1
  56:17,25
**names** 26:18
  56:21
**nature** 11:16,19
  26:22 56:8
**near** 34:4
**need** 6:17,20,24
  37:4 59:9
**needed** 24:22
**needing** 8:12
**negative** 10:14,23
  11:9 26:9
**negotiated** 19:22
  20:1
**negotiating** 33:3
**negotiations** 43:1
  48:6
**new** 42:16 45:15
**Newton** 10:24
  26:15,19 50:3,5
  50:14,15
**non-bargained...**
  42:20 43:18

44:4
**non-collective**
  29:9,13
**nonunion** 51:23
**normally** 12:20
  23:1
**Norman** 4:3 5:9,9
**NORTHERN** 1:1
**Notary** 60:4,23
**notice** 22:20,20
  23:2 41:20
**notification** 24:4
**November** 12:23
  17:14,18 18:13
  18:17 19:22
  20:1,15 60:20
**number** 32:9
  38:11 40:7
  42:15,25 43:4,6
  43:11 45:9 47:9
  47:10,13,20,25
  48:4,18 57:10

**O**

**oath** 5:6
**object** 29:25,25
**objection** 5:5,11
  23:10 31:18
  45:18 51:2 55:9
  55:15
**Objections** 2:20
**obviously** 10:8
**October** 12:23
  13:5,7,10,12
  17:22
**offensive** 35:22
**offer** 7:6,7 52:14
  52:16,18,20,21
**offered** 58:14
**offhand** 20:14
**office** 4:3 5:9
  10:4 24:12 25:6
  60:19
**officer** 5:5

officers 50:4
**Oh** 13:14 15:21
  17:21 19:2 30:5
  38:16 40:20
**Ohio** 1:1,20 4:4,7
  4:10 22:23 60:4
  60:19,23
**okay** 6:3,17,18,22
  6:23,24 7:4,9,12
  7:14,18,24 8:6
  8:15,17,19 9:1,8
  9:19,25 10:2,6
  10:12 11:3
  12:19 13:4,11
  13:14,15,20,24
  14:1,2,10,13,17
  14:21,23 15:6,9
  15:20 16:6,9,18
  17:10,21 18:3,6
  18:10,13,21
  19:13,22 20:1
  20:15 21:3,22
  22:6,9,17,19
  24:13 25:17,24
  26:4 27:10 28:4
  29:3,10,12,15
  32:8,10,16 34:4
  34:7,18,18 35:4
  35:23 38:1,12
  38:15,19 39:1,4
  40:1,8,14,23,24
  40:25 41:5,20
  42:4,12 43:7,10
  45:7,25 46:3,6
  48:24 49:21
  50:13,16,23
  52:5,8,8,15,17
  52:24 53:5,14
  53:18 54:5,8,9
  54:12,23 55:6
  56:9 57:5,24
  58:18,25
**on-campus** 39:6
  39:7

**once** 25:6
**oops** 22:10
**operating** 31:16
**operations** 39:7
**operators** 41:13
**opportunity** 59:5
**oral** 29:20 30:13
**orally** 29:22
**ordered** 49:20
**ordinarily** 29:16
  29:18 30:6
**organization**
  23:23,24 24:2
  28:5,19,25
  30:20
**organizational**
  28:6,17 29:23
  29:23
**organize** 28:13
**organized** 28:8
  28:12
**originally** 57:23
  58:21
**outside** 37:20
**overall** 31:15
**overtime** 37:15

**P**

**p.m** 1:14 4:20
  54:11,11 59:14
**page** 2:4 14:18
  34:5
**paid** 23:15 36:25
**painters** 41:11
**Pam** 21:14
**Pamela** 21:10,12
**paragraph** 10:12
  13:11 30:2
  52:13 53:6
**paramount** 37:17
**paraphrasing**
  12:2
**part** 16:23 17:4
**part-time** 25:13

**particular** 16:25
  27:15 40:2
  45:21 47:6,8
**parties** 4:14
  60:14,15
**pay** 23:13 53:25
**people** 37:14 38:7
  40:9 41:13
  50:18,19 55:2
  55:24 56:2,4
  57:2,14,18
**percent** 10:3
  27:25 28:16
  29:2 33:12,21
  33:22
**perform** 25:15
**performance**
  14:9,10 23:18
  23:20 27:5
  30:24 31:2,23
  31:23 32:2 38:1
**period** 7:24 9:5
**permanent** 8:11
**person** 4:25
  12:19 13:3 17:2
  17:6 18:21
  21:10 26:8 27:1
  31:21 37:8,23
  38:6 42:19
  43:17 44:2
  51:17,18,23
  56:16,20 58:11
**personnel** 37:14
**phone** 11:21
  23:22 24:5,9,11
**Piersall** 2:21,22
  2:23,24,25 3:1,2
  4:8 5:12,13
  10:7 23:10
  29:24 31:18
  45:18 51:2 54:8
  55:9,11,15 59:4
  59:11
**place** 12:24 60:11

JOHN ELLIOTT
September 18, 2023

67

placed 20:16
places 36:17
plaintiff 1:4 4:2
5:10
Plaintiff's 2:7 7:2
9:10 14:3 15:10
21:23 29:4
32:11 34:16
38:8 40:15 52:9
plan 31:2 39:4
please 4:22 10:9
34:5 59:10
plumbers 41:11
plus 7:20
point 9:3 13:3
27:6,11 30:10
34:12 50:16
police 50:2,4,7,10
50:11,11
policy 23:16
29:10 30:1
39:15,19,21,22
poor 10:20,20
23:18,19
positing 42:9
position 9:5
18:23 19:3,5
20:18,23 36:24
38:1 42:14,16
42:20,20 43:14
43:18,19,21
44:3,3,4 45:16
52:25 53:3 55:1
58:10,14,16,17
58:18
positions 57:10
positive 26:12
27:5
possible 21:20
35:24 50:24
posted 54:23 57:9
57:9,16
Postel 8:9 48:10
48:12

posting 57:6,7
postings 48:19
Powell 58:12
Power 38:20
practice 23:2
prefer 15:19
premise 36:14
prepared 10:19
10:23 11:4,7,13
preparedness
26:24
presence 60:7
present 4:12 5:21
52:2
presented 19:14
19:16
president 43:1
48:5,10,12
previous 17:14
52:25
previously 16:25
17:1 55:25
57:16
principle 29:19
prior 6:10 54:2
probably 8:13
10:1 15:4 33:8
34:11 36:3
38:23 58:8
problem 28:5,19
43:22
problematic 20:9
20:12
problems 5:18
24:13 26:4 28:6
28:25 42:11
procedures 31:17
51:20
processing 56:22
professional 4:18
proffering 49:17
progressive
29:19
project 8:13

ProMedica 56:24
56:25
proposals 43:2
48:7
provide 34:6
provided 34:9
Public 60:4,23
put 20:22 47:17
putting 44:19

———
Q
———
qualified 60:5
quality 37:10,10
49:4
question 6:10
16:16 31:20
36:15
questioning 45:6
questions 11:23
12:14,16 32:25
46:19 51:22,25
54:13
quick 10:7 29:25
quite 13:25

———
R
———
raised 32:20
rating 14:19
read 21:14 22:15
33:16 59:5,12
real 10:7 29:25
really 32:7 46:14
reason 6:11,13,15
8:6 33:20 43:2
48:6
recall 12:16
15:25 17:21
18:9,13 20:9,20
21:8 24:21
27:19 28:3 34:8
34:10 35:4,6,8
38:3 41:14
42:12,23,24
46:9,25 48:20
48:23,24 57:21

receive 23:13
received 7:9
33:15
receiving 41:14
recess 54:10
recognize 32:21
40:18
recollection 18:6
19:18 20:4 35:9
record 5:4 30:1
54:15
recruited 53:21
recruiting 8:23
57:14
reduced 60:7
referring 18:2
refresh 19:10
refuse 58:18
regarding 33:5
49:7 56:11
registered 4:18
regularly 37:16
relating 33:5
relations 11:2
15:21,22 16:15
17:7,8 51:6,16
54:19
relationship 16:5
relative 60:14,15
relevant 30:11
reliability 26:23
reliable 10:25
12:8,9 25:5
26:13 32:6
relying 13:13
remember 12:4
15:3,5 16:11
17:3 18:11 19:7
19:19 20:7,11
20:12 21:1,21
22:22 23:24
27:2 33:6,14,19
36:1,2 41:18
42:2,3,10,17,18

42:21 43:6,9,23
44:9 45:12 46:5
46:11,12 47:8
47:21 48:1,2,3
48:16,17 49:2,3
49:5 53:3 56:15
57:9,22,23
remembered
56:21
remembering
19:11
reminder 6:8
remote 5:19 39:6
39:11,25
render 28:18
RENO 1:19
rep 18:5 19:8
51:22
replaced 17:7
replacement
31:12 52:7
report 9:4,7
reported 24:6
reporter 1:15
4:15,16,18,24
reporting 1:19
60:17
represent 5:4,10
5:14
representative
17:23,24
represented
19:15
reprimand 29:20
29:20 30:13,14
reprimanded
29:22
reputation 32:5
request 21:5,16
35:12 36:21
38:19
requested 35:5
40:9 42:16
48:18

JOHN ELLIOTT
September 18, 2023

requesting 35:2
resources 57:12
resources' 8:22
respect 11:17
  27:22 31:21
  35:17 47:12
respond 12:20
responded 18:19
response 18:14
  18:18 35:10,11
responsible 9:6
  16:3
restructuring
  18:22
result 28:19,24
resumed 54:11
retaliated 44:23
retaliation 44:15
  44:18 46:13
  47:16
retired 50:7
retrospect 25:22
return 33:14
returning 57:19
review 14:9,10
  15:18 26:9
  32:24 34:5
reviewed 14:15
  34:8,11
reviewer 14:13
reviews 26:12
Rich 4:6 5:14
Rick 11:25
right 7:17 15:8
  15:14,22 16:1
  19:12 22:19,24
  29:3 30:9 34:18
  36:6,19 38:10
  40:13 42:16
  44:7 46:16
  52:11 55:4,5
  58:13,25 59:6
  59:11
ring 16:13 48:8

risk 43:15
role 9:6 24:4
  36:24 37:5 41:6
  47:23 51:4
roles 37:15,22
room 12:1
rotate 39:5
routing 38:22
RPR 1:15
Rudy 42:22,22
  48:3 49:2
ruined 32:4
rule 30:7 60:17
rules 6:7 51:20
run 57:11
run-in 18:7
run-ins 18:8

—————————
S
—————————
salary 7:15 53:6
  53:19
salvage 30:21
  31:7
salvageable
  30:23 31:8
satisfactory 32:1
saying 21:11 36:3
  42:18 44:6,8
  51:11 55:6
says 7:8,15 13:8
  13:11 14:18,22
  14:25 16:12
  20:15,25 22:23
  34:5 35:14 37:5
  39:8
Schaller 4:11
  5:16
schedule 39:11
scheduled 6:19
Schroeder 33:9
  34:14 46:2 47:1
Schwartz 21:11
  21:12,14
score 31:15

scratch 27:6
screen 6:24,25
  9:12 22:1 29:6
  32:13 34:21
scroll 15:19 22:9
  34:24
scrolling 9:19
seal 60:19
seasoned 31:4
sec 34:25
secret 55:7,14,19
Section 29:15
  30:2
see 6:25 8:11 9:12
  10:16 14:5,7,19
  14:22 15:14 19:9
  22:1 24:7 29:6
  32:13 33:21
  34:3,21 35:24
  38:10,13,14
  40:4,19,20
  44:23 52:11,13
  56:15,18,23
  57:2,18
seeing 32:15
seen 15:1
selected 32:14
send 12:7,13,20
  23:17 59:8
Senior 4:9 41:4
sense 25:22
sent 24:8 39:3
  44:12,21,22
  48:9,10
separately 46:4
September 1:13
  4:19 13:9
serious 31:22
service 1:19
  22:25
serving 25:16
session 43:1 48:6
set 60:19
setup 47:15

share 6:24
shared 33:8
Sharkey 2:5 4:4
  5:8,8,20 6:2,4
  10:10 30:5 54:5
  54:9,12,16
  58:25
show 52:2
showing 9:8
  21:25 34:19
signature 9:20
  22:11 52:17
signed 52:22
significant 10:14
signing 22:16
similar-type
  38:25
Simpson 52:5,6
  52:16 56:15
  57:21
situation 17:22
six 58:9
skills 23:24 28:2
  29:23 30:16,24
slowly 4:23
Smith 10:24 11:8
  11:14 26:21
sole 16:6,7
somebody 34:2
  34:14
Somewhat 32:22
soon 10:13
sorry 9:22 11:18
  21:1 29:17 30:8
  32:18 34:24
  41:4 42:2 48:2
  54:17 55:10,12
sort 17:22 18:7
  38:23
sorts 41:10
sounds 18:4
  58:13
South 4:7 8:18
speak 6:8,9 26:10

  55:20
speaking 4:25
specific 12:4,16
  19:4 30:2
specifically 10:18
  11:3,6,10,15
  15:3 18:1 20:8
  23:19 33:14
  49:1
specificity 49:5
specifics 21:21
specified 60:12
spoke 26:8
staff 26:17 35:14
  39:5,14 54:1
  56:12,12
stagger 39:4
standpoint 23:15
started 13:4,16
  27:8 46:19,20
state 5:3 19:13
  22:23,25 23:16
  60:4,23
stated 11:12
statement 19:3,6
statements 21:8
  21:19
STATES 1:1
stay 58:24
stenotype 60:7
steps 30:11,14
sticks 28:7,17
stipend 35:3,5,25
  37:11
stipends 35:13
  37:3,4
stone 30:7,10
strategy 9:2,6
  57:17
Street 1:20 4:3,7
successful 24:3
sufficient 24:3
suggesting 12:13
Suite 1:20 4:7

JOHN ELLIOTT
September 18, 2023

69

**super** 55:7,13,14
**supervisor** 23:21
  30:10 51:24
**support** 21:10
  37:23
**supported** 24:7
**sure** 10:3 18:5,25
  27:25 28:16,20
  29:2 34:10,11
  43:3,4 53:13
  59:8
**surprised** 35:12
**surrounded**
  26:22
**Susan** 4:4 5:8 6:4
  6:5
**suspension** 29:21
**Swaine** 11:25
**swearing** 5:19
**sworn** 5:23 60:5
**system** 29:20
  38:23

**T**
**tactics** 57:18
**take** 4:25 6:21
  25:1 27:10,14
  32:24 33:4 40:2
  54:6,17
**taken** 33:25
  54:10 60:11
**talent** 9:1,6
**talk** 4:23,23
  27:11 47:5,25
  57:25
**talked** 16:18 47:7
**talking** 19:20
  49:3
**team** 37:24
**technicians** 49:4
**tell** 11:11 15:17
  22:3 29:8 38:15
  50:19 60:6
**telling** 45:23

**tentatively** 48:19
**Teresa** 60:4,22
**Teri** 1:15 4:17
  59:11
**terminated** 23:4
  53:12
**termination** 23:8
  24:4,7 41:21
**testified** 5:24
  45:7
**testimony** 6:12
  60:6,8
**thank** 9:8 10:2
  42:4 54:9 59:1
  59:3
**theory** 25:2
**thing** 32:20 37:18
**things** 41:10
**think** 8:24 13:9
  13:10 17:9 18:8
  22:23 24:21
  25:14 27:24
  28:11,12 29:1
  31:7 32:5,14
  35:13 38:22,24
  39:13 41:2,17
  45:4,14,20,22
  47:17 50:3,7,7
  50:14,22 52:21
  53:15,15,16,17
  55:17 56:17
  58:2,3,3,4,5,6
  58:13,17,21,21
  58:22,23 59:7
**thought** 16:16
  47:15
**three** 25:4,16
  36:11 43:8
  45:13 46:3
**Thursdays** 39:25
**time** 1:14 4:20
  5:1,2 7:25 9:5
  11:13 12:24
  20:7 24:6 25:19

26:1,3,25 27:15
  35:19,20 36:17
  38:2 41:20
  47:21 49:9 58:7
  59:2 60:11
**timeliness** 26:25
**timely** 28:14
**title** 15:20,21
  16:12,14 41:2,5
  51:5 54:19
**today** 6:12
**Today's** 4:19
**told** 8:9 23:22
  27:13 51:7
**Toledo** 1:6,20 4:4
  4:9,10 5:15
  7:10 8:12 36:18
  50:2,12 56:3
  60:19
**top** 16:9 40:17
**Toth** 10:24 18:22
  40:24,25 41:1
  42:7,11,14
  43:15,22 44:1,6
  45:15 48:4
**trades** 41:12
**training** 8:24
**transcribed** 60:7
**transcription**
  60:8
**true** 35:21 60:8
**truth** 60:6,6,6
**truthful** 6:13,16
**truthfully** 6:12
**try** 6:8,9 12:10
  30:21 31:2
**trying** 24:18,20
  25:11 28:8,11
  43:14 45:2,20
  56:10 57:14
**Tuesday** 41:16
**Tuesdays** 39:25
**tuition** 33:12
**tussle** 42:5

**twice** 25:6
**two** 6:19 8:2
  25:12 27:2 44:5
  45:8 48:19
**two-and-a-half**
  33:23
**two-year** 7:24
  8:13,14
**type** 45:2
**types** 30:16,19,23
  30:24 31:9

**U**
**U** 56:3
**UH** 4:10
**Uh-huh** 45:10
**ultimately** 58:19
  58:20
**unable** 25:10
**unacceptable**
  30:16 31:10
**unclassified**
  22:25 30:4
**underperform**
  30:17
**underperformi...**
  46:18
**understanding**
  19:23 20:2,4
  39:8,9
**union** 16:4 17:23
  17:24 18:7,9
  47:4 51:17,18
  51:19,21
**unions** 15:25
  16:2,4,19 28:10
**unit** 19:23 20:2
  20:17,18 24:20
  29:10,13
**UNITED** 1:1
**university** 1:6 4:9
  4:10 5:15 7:10
  8:18 16:5 23:4
  23:8 29:16,18

32:5 36:18 50:2
  50:11,12 57:3
  57:12,20,25
**unprepared**
  11:17
**updates** 46:22
**UT** 5:17 8:7,19
  10:9,15 13:4,12
  13:17 15:2
  18:15,18 22:21
  52:25
**UT's** 19:3
**UTPPA** 16:1

**V**
**vacancies** 56:4
**vacant** 57:10
  58:10
**Vaguely** 41:16
**values** 14:18
**verbatim** 12:5
  23:25 27:2
**version** 12:5
  23:25
**violation** 20:19
**VP** 41:1,5
**vs** 1:5

**W**
**waiting** 27:16
**want** 12:1,10
  13:22 24:17
  30:22 32:25
  33:13 51:24
  55:25 59:7
**wanted** 31:10
  34:2 39:18 54:3
**wanting** 39:15
**wasn't** 8:10 11:12
  11:13 25:21
  26:11 32:2,6
  39:17 46:21
  53:21,24 57:9
  58:8
**way** 17:16 37:7

JOHN ELLIOTT
September 18, 2023

70

38:4 47:17
**we'll** 6:21
**we're** 6:19 12:23
  42:4
**week** 25:7 37:2,6
  37:16
**weeks** 28:22
**weigh** 34:15
**Wendy** 14:14,15
  15:6,8
**went** 39:23 56:25
  58:22
**WESTERN** 1:2
**WHEREOF**
  60:19
**wish** 56:21
**withheld** 19:21
**within-named**
  60:5
**witness** 5:7 59:3
  59:8 60:5,7,19
**wondering** 16:22
  19:4
**word** 12:9
**word-for-word**
  12:5
**work** 8:18 14:18
  37:2,6,6,11,15
  37:15,21 38:7
  38:16 39:6,6,11
  39:15,20,22,25
  40:10 42:17
  45:16 51:21
  54:2 56:25
**worked** 41:12
  42:13 55:25
**working** 8:15,17
  16:3 23:12,14
  25:9,25 26:2
  33:2 35:15,15
  36:17 53:22
**wouldn't** 36:8
**Wow** 20:6 41:17
**write** 22:14

**writing** 52:2
**written** 22:15
  29:20 30:13
  31:13
**wrote** 22:13
**Wynn** 1:3 4:12
  5:10,21 10:15
  14:11 15:15
  18:14,17 19:22
  20:1 21:6,15,17
  22:8,13 39:1
**Wynn's** 17:5

**X**

**X** 2:1

**Y**

**yeah** 7:20 13:7,19
  14:6,6,6,7,8
  16:8,14,21
  30:12,15 32:19
  32:22 34:20
  35:7,14 38:18
  40:6,21,24
  41:19 42:8,15
  43:13 47:14
  51:15 52:13,14
  53:8 56:10,13
  59:10
**year** 13:23,25
  39:24
**years** 8:2 12:3
  27:2
**Yep** 9:18

**Z**

**Zashin** 4:6 5:14
**Ziviski** 24:5,6
  26:5 46:1 47:22
  48:25 49:1,3,4
  54:17
**Zoom** 1:11 4:15
  5:7
**zooming** 7:12

**0**

**1**

**1** 2:8 7:2 33:12,21
  33:22 42:15
  43:6,11 45:9
  47:9,10,13
**1,000** 7:23
**10** 2:16 38:8,11
**100** 1:20 27:25
  28:16 29:2
**11** 2:17 40:13,15
**110,000** 53:6,14
  53:18
**136** 4:3
**14** 2:11
**15** 2:10
**17** 4:7
**18** 1:13 4:19

**2**

**2** 2:9 9:9,10 10:12
  13:11 45:11
  47:18,20,25
**2019** 17:14
**2020** 13:5,12 14:6
  17:16,22 18:13
  18:17 19:22
  20:1,15
**2023** 1:13 4:19
  60:20
**2028** 60:23
**21** 2:12 27:20
  54:20
**22** 2:18 52:9,12
**224-4411** 4:7
**23** 2:21
**249-2705** 1:21
**25** 14:6
**250,000** 7:16
**26th** 41:16
**28(D)** 60:17
**29** 2:13,22

**3**

**3** 2:10 15:9,10
  42:25 45:11
  47:18 48:4
**3:22-cv-01899**
  1:4
**31** 2:23
**32** 2:14
**34** 2:15
**3620** 4:10
**38** 2:16

**4**

**4** 2:11 14:1,3,19
  14:21,22 15:7,8
  43:4 45:11
  47:18 48:18
**4:01** 1:14 4:20
**40** 2:17 37:6,16
**414** 1:20
**419** 1:21 4:4,10
**43215** 4:7
**43604** 1:20 4:4
**45** 2:24

**5**

**5** 2:12 21:23 22:1
**5:17** 54:11
**5:28** 54:11
**5:36** 59:14
**50** 37:2
**50,000** 33:23
**500,000** 33:22
**51** 2:25
**52** 2:18
**530-5393** 4:10
**55** 3:1,2
**5th** 40:5 60:20

**6**

**6** 2:5
**60** 37:2
**614** 4:7
**6th** 32:23

**7**

**7** 2:8,13 29:3,4
**724-3701** 4:4

**8**

**8** 2:14 32:9,11
  60:23
**80** 10:3

**9**

**9** 2:9,15 34:16,19
**90** 13:1 23:4,8,13
  23:16
**90-day** 22:20,20
  23:2
**900** 4:7