# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### WESTERN DIVISION

**DREYON WYNN,**

     Plaintiff,

     v.

**UNIVERSITY OF TOLEDO,**

     Defendant.

CASE NO. 3:22 CV 1899

JUDGE JAMES R. KNEPP II

**MEMORANDUM OPINION AND ORDER**

## INTRODUCTION

Currently pending before the Court is Defendant the University of Toledo's Motion for Summary Judgment (Doc. 34) in this Title VII employment discrimination and retaliation case (Doc. 6) brought by Plaintiff Dreyon Wynn. Plaintiff opposed (Doc. 37) and Defendant replied (Doc. 38). Jurisdiction is proper under 28 U.S.C. § 1331. For the reasons stated below, the Court grants Defendant's motion.

## BACKGROUND

Viewed in the light most favorable to Plaintiff, the available evidence demonstrates the following facts.

<u>Plaintiff's Employment</u>

This case arises out of Defendant's termination of Plaintiff's employment. *See* Doc. 6. Plaintiff is an African American male. *Id.* at ¶¶ 1, 27. Defendant hired Plaintiff on March 25, 2020, as its Director of Labor/Employee Relations and Human Resource ("HR") Compliance. *See* Doc. 32-1. Plaintiff's job duties included providing leadership for UT's labor negotiations, ensuring compliance with labor laws and collective bargaining agreements, serving as a grievance hearing

officer, and monitoring equal employment opportunity investigations and compliance. *See* Doc. 32-2. Plaintiff oversaw negotiations with four unions: the Fraternal Order of Police ("FOP"), Communications Workers of America ("CWA"), American Federation of State County and Municipal Employees ("AFSCME"), and the University of Toledo Police Patrolman's Association ("UTPPA"). (Wynn Depo., at 26-28).[1] Plaintiff also investigated complaints of discrimination. (Elliott Depo., at 53-54).[2]

Plaintiff reported to Wendy Davis, Associate Vice President and Chief Human Resources Officer, until she was terminated and replaced by John Elliott in September 2020. (Davis Depo., at 105-06)[3]; *see* Doc. 32-1. Plaintiff only reported to Elliott for three months; he then reported to Bethany Ziviski after Defendant hired her in January 2021 as the Executive Director of Labor/Employee Relations and HR Compliance, and Ziviski reported to Elliott. *See* Doc. 33-2. Elliott asserts he was "hired to assess[] and correct[] the [HR] department's issues". (Doc. 29-2 at ¶ 3).

Performance Concerns

Elliott later reported that during his supervision of Plaintiff he:

found that there was significant negative feedback from internal UT customers concerning Dreyon Wynn. For example, I was told that he was unprepared or late for meetings, that he did not have an agenda, and that it was difficult for them to obtain from Mr. Wynn the labor expertise they needed to navigate the union and collective bargaining issues in their departments.

*Id.* at ¶ 2. "Every person I spoke with when I got there gave [Plaintiff] a negative review." (Elliott Depo., at 28). "[N]o one had anything positive to say about his performance." *Id.* at 29. Elliott

---

1. Plaintiff's first deposition is located at ECF Doc. 31.
2. John Elliott's deposition is located at ECF Doc. 29.
3. The parties have agreed that depositions taken in the case of *Davis v. Univ. of Toledo*, No. 3:22-cv-301 (N.D. Ohio), be used in the present case. Wendy Davis's deposition is located at ECF Doc. 28 in the present case.

shared these concerns with Plaintiff. *Id.* at 27. He further stated he "also knew that [Defendant] would soon be hiring a new Executive Director of Labor/Employee Relations and HR Compliance, and [he] would want that individual to independently assess [Plaintiff]'s performance . . . before taking any actions". (Doc. 29-2 at ¶ 3). Elliott stated the CEO of Defendant's medical center, Rick Swaine, asked Plaintiff not to be assigned to a particular labor issue due to concerns about his competence and reliability. (Elliott Depo., at 13-14).

Defendant asserts the following deficiencies in Plaintiff's performance:

- On June 30, 2020, Defendant's Police Chief, Jeffrey Newton, emailed Plaintiff about Covid related budget cuts. He expressed frustration with Plaintiff's handling of the negotiations. *See* Doc. 32-26. He felt unsupported by Plaintiff, who let the union attorney take the lead. (Newton Depo., at 15).[4]

- On July 27, 2020, Plaintiff arranged a mediation for a union member's grievance without notifying Chief Newton, who only found out when his officers requested leave to attend. (Newton Depo., at 12-14). Newton, who typically plays a significant role in such mediations, was surprised and emailed Plaintiff upon learning that police management was uninformed about the meeting which included a union attorney and four union members. *See* Doc. 32-43.

- In July 2020, amidst a dispute concerning Covid related layoffs affecting CWA workers, CWA liaison Kathy Sullivan asked Plaintiff for information regarding these layoffs. Plaintiff indicated that he would provide the information the next day. He failed to do so despite multiple follow ups from Sullivan. *See* Doc. 32-25. After Sullivan inquired into the delays, Plaintiff responded "My recommendation to you is don't accuse people of things

---

4. Jeffrey Newton's deposition is located at ECF Doc. 30.

that are not true, I am not stalling. Making false accusations are not going to help you with getting the information you requested." *Id.* at 1.

- On October 2, 2020, Sullivan emailed Plaintiff to ask why HR was not informed that a job was going to be filled. She stated in the email: "CWA feels this further established the fact there is no truly open lines [sic] of communication between HR and the Union". (Doc. 32-28, at 1). Plaintiff accused Sullivan of fabricating a false narrative: "I suggest next time you call me rather than putting false accusations in an email to fit a narrative you conjured up in your mind. You are treading a fine line Kathy . . . I suggest you cease and desist with your false accusations." *Id.*

- In November 2020, while serving as a hearing officer for a police department vacation time grievance, Plaintiff misstated facts by claiming Chief Newton had not presented documentation during the hearing, although Chief Newton had provided a document that resolved the union's grievance. (Newton Depo., at 27-30). Chief Newton pointed this out to Plaintiff, though Plaintiff later dismissed it as trivial. (Doc. 32-34, at 1).

- In November 2020, Plaintiff endorsed a Letter of Agreement that repositioned a CWA member into another AFSCME role in direct violation of the AFSCME contract and state collective bargaining law. *See* Doc. 32-31.

- On December 9, 2020, Elliott's assistant was looking for Plaintiff at the request of another employee. During this time, Plaintiff did not respond to emails, and his location was unknown. *See* Doc. 32-35. He had marked himself off on his calendar for two consecutive days but had not recorded this in the HR Department's time off system. Upon being confronted, Plaintiff accused Elliott's assistant of making "false statements". *Id.* at 1.

4

<u>Plaintiff Applies for Promotion</u>

In late 2020, Defendant posted a vacancy for the position of Executive Director of Labor/Employee Relations and HR Compliance. (Doc. 29-2, at ¶5). To fill this role, Defendant assembled a search committee that consisted of Elliott (Caucasian); Melissa Hurst (Caucasian), UT's Executive Director of Talent Strategy and Development; Jennifer Cherry (Caucasian), Senior HR consultant assigned to clinical; and Dr. Willie McKether (African American), UT's Vice President of Diversity and Inclusion. *Id.* Elliott states he "had the ultimate hiring authority and, while the search committee made their recommend[ations,]" he "made the final decision". *Id.*

The search committee reviewed eight applications and selected three for interviews: Bethany Ziviski (Caucasian), Kevin West (African American), and Plaintiff. *Id.* at ¶ 6. The three interviews were conducted on November 16, 2020; Defendant submitted in support of its Motion the notes made by the search committee members. *See* Doc. 32-7. None of the members voted to consider Plaintiff for the role, all four voted for West, and three voted for Ziviski. *Id.* at 2-4. The committee ultimately selected Ziviski, and Elliott concurred, stating she:

> had the broadest experience in human resources, having experience with labor relations and different industry sectors. I found her experiences to be very valuable in assessing the current and future needs of the Human Resources Department. Because I am only employed by [Defendant] on a two-year, interim basis, it is important to consider succession planning.

(Doc. 29-2, at ¶ 7). With regards to Plaintiff, Elliott states:

> I did not believe that [Plaintiff] was as knowledgeable as Ms. Ziviski in the areas in which I believed were necessary to resolve issues in the Department and then modernize [Defendant]'s human resources functions, nor did I find his experience to be as broad-based as hers.

*Id.* at ¶ 8. Ziviski possessed a law degree, which was a preferred qualification for the position; Plaintiff did not. (Doc. 29-3, at 4).

Ziviski's Evaluation of Plaintiff

On January 11, 2021, Ziviski assumed her role as the Executive Director of Labor/Employee Relations and HR Compliance. (Ziviski Aff., at ¶ 1).[5] Ziviski, as Plaintiff's supervisor, identified several deficiencies in Plaintiff's performance, including poor organization and failure to provide accurate grievance lists. (Ziviski Depo., at 17-18).[6]

Ziviski requested Plaintiff provide her with a comprehensive list of outstanding grievances. (Ziviski Aff., at ¶ 3). On January 13, 2021, Plaintiff provided a list which included four AFSCME grievances, two UTPPA grievances, and three CWA grievances. *Id.* at ¶ 7. On January 14, 2021, Plaintiff followed up and provided her with a list of twelve more outstanding CWA grievances. *Id.* at ¶ 9. On January 15, 2021, Ziviski spoke with CWA liaison Kathy Sullivan, who informed her that they were "buried" with around 35 grievances; Sullivan told Ziviski Plaintiff was aware of this number because Sullivan met with Plaintiff about the grievances and Plaintiff wanted to hear the grievances earlier that week. *Id.* at ¶ 10. On January 26, 2021, Plaintiff then emailed Ziviski and stated there were 35 pending grievances. *Id.* at ¶11. Plaintiff's proffered reason for failing to initially identify the correct number of CWA grievances was that departing employee Dan Powell had received them from Sullivan in July 2020 but had not logged them. (Doc. 32-41, at 1).

On January 13, 2021, Ziviski requested Plaintiff provide her with a list of all CWA employees working at the Main Campus Medical Center ("MCMC"). (Ziviski Aff., at ¶12). In response, Plaintiff provided Ziviski with a list of all CWA employees employed by UT, not just those employed at the MCMC. *Id.* at ¶ 13. On January 14, 2021, Plaintiff provided another list that

---

5. Bethany Ziviski's Affidavit is located at ECF Doc. 34-1, starting at page 7.
6. Bethany Ziviski's deposition is located at ECF Doc. 33.

identified 49 CWA employees employed at the MCMC. *Id.* at ¶ 15. This list was inaccurate – only one CWA employee worked at the Medical Center. *Id.*

On January 20, 2021, Ziviski observed Plaintiff was storing work documents on his personal flash drive; she emailed a request to him to store them on UT's shared HR network directory so all HR and Labor staff could have access and to meet UT's public records obligations. (Ziviski Depo., at 63); *see* Doc. 32-39.

On January 20, 2021, Plaintiff requested salary information to audit wages for what he labeled "potential discrimination with pay" in the department. *See* Doc. 31-5.

In January 2021, Ziviski learned Plaintiff had coordinated a new hire without completing necessary documentation or securing union approval. (Ziviski Aff., at ¶ 25). Additionally, Ziviski discovered Plaintiff failed to respond to inquiries from HR consultants and internal UT customers regarding labor matters. *See* Docs. 32-45, 32-49.

Plaintiff's Termination

Ziviski recommended Plaintiff's termination to Elliott, who agreed and was the final decisionmaker. (Ziviski Aff., at ¶ 29); (Elliott Depo., at 24). Plaintiff received his 90-day notice of termination on January 26, 2021, and was paid in full through April 26, 2021. (Wynn Depo., at 68-69); (Doc. 31-1 at 2). Plaintiff was an unclassified, or "at will," employee for the entirety of his UT employment. (Wynn Depo., 68-69).

Ohio Civil Rights Commission Charge

Plaintiff filed a charge of discrimination with the Ohio Civil Rights Commission ("OCRC") on January 19, 2021, alleging race and retaliation discrimination. *See* (Doc. 32-22);

(Doc. 37, at 22); (Doc. 38, at 9). Plaintiff filed a second[7] charge of discrimination on October 25, 2021. *See* Doc. 31-11. On October 21, 2021, the OCRC issued its Letter of Determination and found probable cause Defendant engaged in unlawful discriminatory practices. (Doc. 1-3). On December 16, 2021, the OCRC issued Plaintiff its Notice of Right to Sue. (Doc. 1-4).

Requests to Return Laptop

In Plaintiff's termination letter, Plaintiff was informed that he was not to work through his 90-day notice and that UT would contact him if it needed anything further. (Doc. 31-1, at 2). Plaintiff's work email account was shut off on January 26, 2021. *Id.*; (Wynn Depo., at 68). Elliott's assistant called Plaintiff on February 1, 2021, and told him to return the University's laptop. (Doc. 31-2, at 2-3). On the same day, Plaintiff replied and copied Elliott and Ziviski, and stated:

> Thank you for contacting me today about my work laptop. However, why is the University requesting that I return the work laptop assigned to me when: 1. I am still an employee of the University of Toledo and Director of Labor/Employee Relations & HR Compliance. 2. I have proprietary rights. At this time, I am requesting the University of Toledo reactivate my work email account.

*Id.* at 3. On February 3, 2021, Elliott replied and directed Plaintiff to "return any University property in your [possession], including any files or documents and the laptop currently in your possession, by February 5, 2021." *Id.* at 1-2. In response to Elliott's February 3 deadline, Plaintiff stated, "I don't live here. And I'm not making a special trip to Toledo." (Wynn Depo., at 86-87). On February 4, 2021, Plaintiff asserted that "some, not all" of the information contained on the laptop belongs to UT and demanded that Elliott cite a Board of Trustees policy which provided him the authority to deny Plaintiff the information stored on the laptop. *Id.* at 1. Plaintiff stated he

---

7. A dispute exists over when Plaintiff filed his second charge of discrimination. Plaintiff claims in his opposition brief he filed it on January 26, 2021; however, he does not point to any evidence. Defendant asserts and points to evidence that he filed his first complaint on January 19, 2021, and then amended it on March 24, 2021. Doc. 32-22. Defendant also cites a second charge of discrimination filed on October 25, 2021. (Doc. 31-11).

would not return the laptop until April 26th, which was the last day of his 90-day notice period. (Wynn Depo., at 99).

Plaintiff's Arrest

Upon Plaintiff's refusal to return his computer for months, Defendant referred the matter to the UT Police Department on April 9, 2021. *See* Doc. 31-7. The case was assigned to Detective Zakrzewski. (Newton Depo., at 21). On April 12, Detective Zakrzewski spoke with Plaintiff, who confirmed he had the laptop in his possession and he "was planning on returning his property on his 'official' last paid working day which was 4/26/21". (Doc. 31-7, at 2). Detective Zakrzewski instructed Plaintiff to return the laptop prior to April 26. *Id.* Detective Zakrzewski tried to contact Plaintiff on four subsequent occasions, each time leaving a voicemail: April 15, April 19, April 22, and April 26. Plaintiff did not return any of these voicemails. *Id.* Plaintiff asserted during deposition the reason he did not return the laptop by April 26 was because he contracted Covid. (Wynn Depo., at 96). Plaintiff admitted he did not inform Defendant that he could not return the laptop by the agreed-upon deadline due to Covid. *Id.* at 97.

On May 3, 2021, after not hearing from Plaintiff, Detective Zakrzewski obtained an arrest warrant. *See* Doc. 31-9. The warrant classified the offense as a "felony 4" level offense because the laptop was valued at $1,260. *Id.* On May 19, 2021, Plaintiff called and left Detective Zakrzewski a voicemail indicating he was passing through Toledo and that he could deliver the laptop; he also said if not that day, he could drop it off on Friday, May 21, 2021. *Id.* Detective Zakrzewski called Plaintiff but was unable to reach him, so he left a voicemail explaining he was going to be out for the following week and instructed Plaintiff to return the laptop by May 24, 2021. *Id.* Detective Zakrzewski did not hear from Plaintiff until May 27 when Plaintiff returned the laptop. *Id.* Detective Zakrzewski told Plaintiff a warrant had been issued for felony theft. *See*

Doc. 31-10. Chief Newton stated Detective Zakrzewski had no discretion under Ohio law to ignore the outstanding felony warrant and therefore Detective Zakrzewski arrested Plaintiff. (Newton Depo., at 25-26). Plaintiff was booked into the Lucas County Jail and released the same day. (Wynn Depo., at 107). Plaintiff subsequently appeared for two court hearings, and the charges were dropped. *Id.* at 126.

Plaintiff asserts Terrie Kovacs, who is Caucasian, also kept her laptop after she was terminated, and Defendant offered to pick it up from her house. *Id.* at 75-76.

### STANDARD OF REVIEW

Summary judgment is appropriate where there is "no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When considering a motion for summary judgment, the Court must draw all inferences from the record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court is not permitted to weigh the evidence or determine the truth of any matter in dispute; rather, the Court determines only whether the case contains sufficient evidence from which a jury could reasonably find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). The moving party bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

This burden "may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Id. The nonmoving party must go beyond the pleadings and "present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson*, 477 U.S. at 257. Further, the nonmoving party has an affirmative duty to direct the Court's attention to those specific portions of the record

upon which it seeks to rely to create a genuine issue of material fact. *See* Fed R. Civ. P. 56(c)(3) (noting the court "need consider only the cited materials").

**DISCUSSION**

Defendant argues it is entitled to summary judgment on Plaintiff's race-based employment discrimination and retaliation claims. Plaintiff's discrimination claims arise from his termination and failure to promote to Defendant's vacant Executive Director of Labor/Employee Relations and HR Compliance position. Defendant asserts that while Plaintiff can establish a *prima facie* case with respect to his termination, he has failed to demonstrate pretext. Additionally, Defendant contends Plaintiff has not established a *prima facie* case for his failure to promote or retaliation claims, and even if he had, he has not shown pretext. Defendant also argues it is entitled to judgment as a matter of law based on the after-acquired evidence defense. Plaintiff contends there are genuine issues of material fact regarding whether his termination and retaliatory actions were racially motivated and asserts he can show pretext for both claims. For the reasons set forth below, the Court finds Defendant is entitled to summary judgment.

Employment Discrimination

"Title VII of the Civil Rights Act of 1964 makes it 'an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'" *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (quoting 42 U.S.C. § 2000e-2(a)(1)). Plaintiff asserts he was discriminated against based on his race. *See* Doc. 6. An individual can prove a discrimination claim by either direct or indirect evidence. Plaintiff takes the indirect path. (Doc. 37, at 15-16). This Court therefore applies the burden-shifting analysis established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and later modified by *Texas Department*

11

*of Community Affairs v. Burdine*, 450 U.S. 248 (1981). This framework places the initial burden on Plaintiff to establish his *prima facie* case. *Burdine*, 450 U.S. at 252-53 (citing *McDonnell Douglas*, 411 U.S. at 802). To satisfy this burden, the plaintiff must show "(1) [he] was a member of a protected class; (2) [he] suffered an adverse employment action; (3) [he] was qualified for the position; and (4) [he] was replaced by someone outside the protected class or was treated differently than similarly-situated, non-protected employees." *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 707 (6th Cir. 2006) (internal citations and quotations omitted). If the plaintiff can establish a *prima facie* case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the action. *Burdine*, 450 U.S. at 252-53 (citing *McDonnell Douglas*, 411 U.S. at 802). If the defendant articulates such a reason, the burden shifts back to the plaintiff to demonstrate the proffered reason was a mere pretext for discrimination. *Id.* at 253.

### Failure to Promote

As to Plaintiff's failure to promote claim, Defendant concedes Plaintiff can establish the first three prongs of his *prima facie* case but contends he cannot establish the fourth because he and Ziviski were not similarly qualified. (Doc. 34, at 19-20). Defendant also asserts even if Plaintiff could establish a *prima facie* case, he has not presented any argument regarding pretext. (Doc. 38, at 6). Plaintiff argues he was more qualified because he possessed more "progressive experience" than Ziviski and that the promotion decision was discriminatory because another African American candidate, Kevin West, who in Plaintiff's opinion was more qualified, did not get the job over Ziviski who is Caucasian. (Doc. 37, at 20). He also asserts that Defendant's HR department was "purged of all [b]lack managers . . . [leaving] [o]nly white managers". *Id.*

In order to establish a *prima facie* case of race discrimination for failure to promote, the plaintiff must demonstrate that: (1) he is a member of a protected class; (2) he applied for and was

qualified for a promotion, (3) he was considered for and denied the promotion; and (4) other employees of similar qualifications who were not members of the protected class received promotions at the time the plaintiff's request for promotion was denied. *Nguyen v. City of Cleveland*, 229 F.3d 559, 562–63 (6th Cir. 2000).

The Court need not address whether Plaintiff can establish a *prima facie* case, because even assuming *arguendo* he could do so, he has failed to produce any evidence that Defendant's decision not to promote him was mere pretext and has therefore failed to carry his ultimate burden of persuasion.

*Legitimate Non-Discriminatory Reason*

An employer's burden is one of production, not of persuasion; it need only state a reason, not prove one. *Burdine*, 450 U.S. at 254–55; *see also Upshaw v. Ford Motor Co.*, 576 F.3d 576, 585 (6th Cir. 2009) ("This is merely a burden of production, not of persuasion, and it does not involve a credibility assessment," (citation omitted)). Defendant has satisfied this limited burden of production. "When an employer offers nondiscriminatory reasons for an adverse employment action, the burden shifts back to the employee to prove that the stated reason for [his] termination is pretextual." *Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 285 (6th Cir. 2012).

Defendant has provided several legitimate, non-discriminatory reasons for promoting Ziviski over Plaintiff. The search committee, including Elliott as the final decisionmaker, found Ziviski had broader experience in HR and labor relations, having previously performed well in the same role. (Doc. 29-2, at ¶ 7). Additionally, Ziviski possessed a law degree, which was a preferred qualification for the position, and Plaintiff did not. (Doc. 29-3, at 4). These reasons qualify as legitimate non-discriminatory reasons for the decision and thus meet Defendant's burden of

13

production. *Burdine*, 450 U.S. at 254–55. Plaintiff is therefore tasked with establishing Defendant's abovementioned reasons were pretext for discrimination.

*Pretext*

The "ultimate inquiry" is this: "did [Defendant act] for the stated reason or not?" *Tingle v. Arbors at Hilliard*, 692 F.3d 523, 530 (6th Cir. 2012) (quoting *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 n.4 (6th Cir. 2009)). To answer that question and establish pretext, plaintiffs typically establish one of three things: (1) that the employer's proffered reason "had no basis in fact," (2) that the proffered reason "did not actually motivate the employer's action," or (3) that the proffered reason was "insufficient to motivate the employer's action." *Chen*, 580 F.3d at 400. "The third category of pretext consists of evidence that other employees, particularly employees outside the protected class, were not disciplined even though they engaged in substantially identical conduct to that which the employer contends motivated its discipline of the plaintiff."); *Chattman v. Toho Tenax America, Inc.*, 686 F.3d 339, 349 (6th Cir. 2012). But these are not the only ways that a plaintiff can establish pretext; these three categories are simply a "convenient way of marshaling evidence and focusing it on the ultimate inquiry: 'did the employer fire the employee for the stated reason or not?'" *Tingle*, 692 F.3d at 530 (quoting *Chen*, 580 F.3d at 400). Plaintiffs remain free to pursue arguments outside these three categories. Even so, a plaintiff must articulate some cognizable explanation of how the evidence he has put forth establishes pretext. *Miles v. S. Cent. Hum. Res. Agency, Inc.*, 946 F.3d 883, 888 (6th Cir. 2020). The Sixth Circuit has held "[r]elative qualifications establish triable issues of fact as to pretext where the evidence shows that either (1) the plaintiff was a plainly superior candidate, such that no reasonable employer would have chosen the latter applicant over the former, or (2) plaintiff was as qualified as if not better qualified than the successful applicant, and the record contains other probative evidence of discrimination."

*Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 815 (6th Cir. 2011). Ultimately, a plaintiff must produce "sufficient evidence from which a jury could reasonably reject" Defendant's proffered reason for its actions. *Id.* (quoting *Chen*, 580 F.3d at 400).

Based on the evidence presented, Plaintiff has failed to show Defendant's legitimate, non-discriminatory reasons for promoting Ziviski over Plaintiff were pretextual. The evidence shows the committee's decision was based on Ziviski's qualifications, including her law degree and broader experience. Notably, none of the search committee members voted for Plaintiff. (Doc. 32-7, at 3). The Sixth Circuit has held:

> If a factfinder can conclude that a reasonable employer would have found the plaintiff to be significantly better qualified for the job, but this employer did not, the factfinder can legitimately infer that the employer consciously selected a less-qualified candidate—something that employers do not usually do, unless some other strong consideration, such as discrimination, enters into the picture.

*Levine v. DeJoy*, 64 F.4th 789, 801 (6th Cir. 2023). The lack of any votes for Plaintiff supports the inference that the decision not to promote him was not influenced by discriminatory motives, especially in the absence of evidence showing he was significantly better qualified than Ziviski. Plaintiff's conclusory statement that Defendant's HR department was purged of African Americans, which creates an inference of discrimination, is not well-taken, as Plaintiff has not provided evidentiary support.

Plaintiff argues another African American candidate, Kevin West, was also denied the promotion, even though all four members of the search committee voted for him, while only three voted for Ziviski, which suggests a pattern of discrimination. (Doc. 32-7, at 2, 4). While the non-promotion of another African American candidate based on these facts may raise questions, it does not by itself establish that the decision was motivated by racial discrimination. *See Williams v. Dearborn Motors 1 LLC*, 2021 WL 3854805, *6 (6th Cir.) ("[A] plaintiff may use pattern evidence

of disparate treatment . . . although, standing alone, it is insufficient evidence to withstand summary judgment.") (quoting *Nichols v. S. Ill. Univ.-Edwardsville*, 510 F.3d 772, 782 (7th Cir. 2007)).

Plaintiff has not shown Defendant's reasons to promote Ziviski over Plaintiff were insufficient. Plaintiff's subjective belief that he possessed more "progressive experience" than Ziviski is insufficient to demonstrate pretext. "The law does not require employers to make perfect decisions, nor forbid them from making decisions that others may disagree with. Rather, employers may not hire, fire, or promote for impermissible, discriminatory reasons." *Hartsel v. Keys*, 87 F.3d 795, 801 (6th Cir. 1996) The search committee unanimously voted to not advance Plaintiff, and the feedback regarding his qualifications and performance indicate Defendant had sufficient grounds for its decision. Plaintiff's argument that another African American was denied the promotion does not establish the decision was based on race.

Under the *Provenzano* framework, Plaintiff must show that either "(1) the plaintiff was a plainly superior candidate, such that no reasonable employer would have chosen the latter applicant over the former, or (2) plaintiff was as qualified as if not better qualified than the successful applicant, and the record contains other probative evidence of discrimination." 663 F.3d at 815. Plaintiff has failed to show either.

Based on the evidence, the Court finds Plaintiff has not demonstrated a question of fact regarding whether Defendant's legitimate, non-discriminatory reasons for promoting Ziviski over

Plaintiff were pretextual. Therefore, Defendant's motion for summary judgment on Plaintiff's failure to promote claim is granted.

*Termination*

Defendant concedes Plaintiff has established a *prima facie* case as to his termination but argues he has failed to demonstrate pretext as to its "litany" of legitimate, non-discriminatory reasons. (Doc. 34, at 22-23). Plaintiff counters that he was never informed of the performance issues and asserts the real reason for his termination was his race. (Doc. 37, at 5, 18).

Defendant provided several legitimate, non-discriminatory reasons for Plaintiff's termination. Defendant received significant negative feedback regarding Plaintiff's performance, disorganization, failure to effectively handle labor relations duties, and combative behavior towards coworkers. These complaints included Plaintiff's failure to provide accurate and timely information regarding grievances, improper organization and storage of important work documents, and a failure to complete necessary documentation for new hires. (Doc. 29-2, at ¶ 2; Elliott Depo., at 28-30; Ziviski Aff., at ¶¶ 4-27). These performance deficiencies qualify as legitimate, non-discriminatory reasons that support the decision to terminate Plaintiff. *Stansberry v. Air Wisconsin Airlines Corp.*, 651 F.3d 482, 488 (6th Cir. 2011) (holding that poor performance constitutes a legitimate, nondiscriminatory reason for termination).

Plaintiff asserts in his opposition brief that Ziviski never brought up these issues with him; however, he fails to reference any evidence in the record to support this assertion. (Doc. 37, at 18). Moreover, even if he had done so, the analysis would not change. Even if Ziviski did not explicitly address the issues with Plaintiff, the documentation and feedback provided by others indicate these issues were known and recorded. Plaintiff even acknowledges he was an unclassified, or "at will" employee, the entirety of his UT employment and that he could be terminated for any reason.

(Wynn Depo., 68-69). The critical question is whether the reasons proffered by Defendant were the actual reasons for Plaintiff's termination.

*Pretext*

At this point, the burden shifts to Plaintiff to establish Defendant's offered reasons are pretextual. The Court finds he has not done so.

First, Plaintiff does not dispute the facts of the existence of performance issues; he instead attempts to downplay them and shift the blame to others, providing only factual statements in his opposition without evidentiary citation. *See* Doc. 37, at 17-19. For purposes of summary judgment, Plaintiff must point to specific evidence in the record to create a genuine issue of material fact. *See Alexander v. CareSource*, 576 F.3d 551, 560 (6th Cir. 2009) ("Conclusory statements unadorned with supporting facts are insufficient to establish a factual dispute that will defeat summary judgment."). Plaintiff has failed to point to admissible evidence in the record. The available evidence demonstrates Defendant had legitimate concerns about Plaintiff's performance.

Second, Plaintiff has not shown Defendant's stated reasons were not the actual reasons for his termination. *Chen*, 580 F.3d at 400. The record evidence shows Defendant's decision to terminate Plaintiff was based on his performance deficiencies, not his race. Rather, Plaintiff states in conclusory fashion "[Plaintiff] lost his job when [Defendant] conducted a purge of all Black managers in the Human Resources[] department". (Doc. 37, at 5). Plaintiff again fails to point to evidence in the record supporting this factual assertion.

Third, Plaintiff has not shown Defendant's reasons were insufficient to support his termination. *Chen*, 580 F.3d at 400. The performance issues identified by Defendant were significant and directly related to Plaintiff's job responsibilities. For example, Plaintiff defended his action of leaving out important documents in a grievance hearing as "[n]o harm, no foul". (Doc.

18

37, at 18). Additionally, Plaintiff has not provided any evidence that shows employees outside the protected class were not disciplined for the same conduct. *Chattman*, 686 F.3d at 349 (holding that evidence of similarly situated employees who engaged in substantially identical conduct but were not terminated can be used to demonstrate that the employer's stated reason for the adverse action is pretextual).

Based on the evidence presented, Plaintiff has failed to show a genuine issue of material fact regarding whether Defendant's legitimate, non-discriminatory reasons for his termination were pretextual. Plaintiff's assertion that Ziviski never brought up his performance issues does not create a question of fact regarding whether Defendant's reasons were false or did not actually motivate its decision. Therefore, Defendant's motion for summary judgment on Plaintiff's race discrimination claim related to his termination is granted.

Retaliation

Plaintiff contends that he was retaliated against when Defendant terminated his employment and subsequently filed an arrest warrant against him. (Doc. 37, at 22). Defendant moves for summary judgment on both claims.

Title VII bars an employer from retaliating against employees for asserting their Title VII rights. 42 U.S.C. § 2000e-3. Similar to a Title VII discrimination claim, a Title VII retaliation claim can be proven "either by introducing direct evidence of retaliation or by proffering circumstantial evidence that would support an inference of retaliation." *Imwalle v. Reliance Medical Prods.*, 515 F.3d 531, 543 (6th Cir. 2008). Plaintiff does not present direct evidence of retaliation, and, therefore, must demonstrate by a preponderance of the evidence four elements: "(1) [he] engaged in a protected activity under Title VII, (2) the exercise of protected rights was known by [Defendant], (3) [Defendant] took adverse employment action against Plaintiff, and (4)

19

there was a causal connection between the adverse employment action and the protected activity." *Taylor v. Geithner*, 703 F.3d 328, 336 (6th Cir. 2013).

*Retaliatory Termination*

Defendant argues Plaintiff cannot establish a *prima facie* case of retaliation related to his termination because he cannot satisfy the second prong: demonstrating Defendant's decisionmakers were on notice of his protected activity. (Doc. 38, at 10). Defendant also asserts that even if Plaintiff had established a *prima facie* case, he does not show pretext. *Id.* at 13. Plaintiff asserts in his opposition brief that he was retaliated against and terminated after he twice filed charges with the OCRC in 2021. (Doc. 37, at 22). However, his Amended Complaint suggests that the termination was purportedly due to his reporting of several allegedly discriminatory actions undertaken or planned by management. (Doc. 6, at ¶ 72).

In his opposition, Plaintiff lists twenty new "protected activities" that were not in his Amended Complaint. *Id.* at 8-11. Defendant offers several reasons why the Court should not consider these new allegations. (Doc. 38, at 10-13). Defendant asserts Plaintiff failed to cite "competent" evidence about these new protected activities. *Id.* at 11. The Court agrees with Defendant that Plaintiff has failed to properly raise and cite the new protected activities.

Plaintiff simply copied and pasted the new protected activities from his OCRC rebuttal statement. *See* Doc. 32-50. *See Celotex Corp.*, 477 U.S. at 324 (holding that to survive a motion for summary judgment, the nonmoving party must point to specific evidence in the record that creates a genuine issue of material fact). Plaintiff failed to point to specific evidence in the record. The Court therefore declines to consider these new factual allegations. The Court, however, even assuming *arguendo* Plaintiff could make a *prima facie* case of retaliation, concludes he did not establish pretext.

As to Plaintiff's retaliation claim regarding his termination, the Court has already found Defendant stated a legitimate, non-discriminatory reason to terminate Plaintiff as detailed above. Plaintiff again has not engaged in a pretext analysis. The temporal proximity between Plaintiff's alleged protected activity and his termination is not sufficient to establish pretext considering the documented performance issues. *Williams v. AT&T Mobility Servs. LLC*, 847 F.3d 384, 396 (6th Cir. 2017) (stating "[a]lthough temporal proximity can demonstrate a causal connection for the purposes of a *prima facie* case, it alone cannot establish pretext"). *Stansberry*, 651 F.3d at 488 (holding that poor performance constitutes a legitimate, nondiscriminatory reason for termination).

Therefore, Defendant's motion for summary judgment on Plaintiff's retaliation claim related to his termination is granted.

*Arrest Related to Laptop*

Defendant concedes that an arrest constitutes a material adverse action but asserts Plaintiff cannot prove the remaining three prongs of his retaliation claim related to his arrest. (Doc. 34, at 27). Additionally, Defendant contends Plaintiff fails to demonstrate pretext. (Doc. 38, at 14). Plaintiff asserts the felony warrant was a "deliberate attempt to impugn [Plaintiff's] credibility as a witness before the OCRC" as it would relate to the several OCRC charges filed against Defendant by its employees alleging race discrimination. (Doc. 37, at 22). He goes on to state "[t]he warrant was issued primarily because Mr. Wynn had filed charges of discrimination with the OCRC/EEOC." *Id.* at 23. However, Plaintiff has not pointed to evidence in the record supporting either factual assertion. *Alexander*, 576 F.3d at 560. He also asserts Terrie Kovacs, who is Caucasian, kept her laptop after she was fired, and Defendant offered to pick it up from her house. (Wynn Depo., at 75-76).

21

The Court need not address whether Plaintiff established a *prima facie* case because he has failed to produce any evidence that Defendant's reason for the arrest was mere pretext and has therefore failed to carry his ultimate burden of persuasion.

*Legitimate, Non-Retaliatory Reason*

Defendant has provided a legitimate, non-retaliatory reason for Plaintiff's arrest – Plaintiff's failure to return his work laptop. Plaintiff was repeatedly instructed to return his laptop, which he failed to do. (Doc. 31-2, at 1-2). On February 3, 2021, Elliott issued a direct order for Plaintiff to return any Defendant-issued property in his possession by February 5, 2021. *Id.* at 2. Despite this direct request, Plaintiff did not return the laptop. Defendant referred the matter to the Police Department, which ultimately resulted in an issuance of a felony theft warrant. *See* Doc. 31-10. Detective Zakrzewski contacted Plaintiff multiple times to have the laptop returned, but Plaintiff did not respond until May 19, 2021, and eventually returned the laptop on May 27, 2021. *Id.* Therefore, Defendant has provided a legitimate, non-retaliatory reason for the arrest. The burden now shifts to Plaintiff to establish this reason was pretext.

*Pretext*

Plaintiff has failed to show Defendant's legitimate, non-retaliatory reasons for his arrest were pretextual. Plaintiff attempts to argue Defendant intentionally chose not to depreciate the value of the laptop, which was two years old, to ensure that the warrant would be a felony due to its higher estimated value. (Doc. 37, at 22). However, the investigation and subsequent arrest were conducted by the Police Department and based on documented policy and investigative procedures outlined by Chief Newton (Newton Depo., at 25-26). Plaintiff has presented no evidence to the contrary.

Next, Plaintiff asserts a Caucasian employee of Defendant, Terrie Kovacs, kept her laptop after her termination, and Defendant even offered to pick it up. (Wynn Depo., at 75-76). Plaintiff seems to imply this meets the third factor in *Chen* regarding pretext in that the proffered reason was "insufficient to motivate the employer's action." *Chen*, 580 F.3d at 400. In *Chattman*, the court explained this pretext can be established when employees outside the protected class engage in substantially identical conduct without facing similar disciplinary action. *Chattman*, 686 F.3d at 349. Plaintiff has failed to show identical conduct here. His own deposition testimony indicates this:

Q. Were there any e-mails other than what we're looking at here that is Exhibit B?

A. Probably with Jason Beck or – because when Terrie left, they called Terrie or contacted her and offered to send somebody to her house to pick up her laptop. And, again, that goes to the different preferential treatment that blacks get that whites -- that whites get that black people don't get. Why would you offer to send someone from the university to Terrie's house to pick her laptop up when she was fired? Right? But when Dre gets fired, you send an e-mail, and then you issue a warrant for my arrest. I mean, again, the differences of how black people are treated and white people are treated is stark con – there's a contrast there.

                                    \*\*\*

Q. And are you aware of Terrie telling anyone at the university that she was not going to return her laptop –

A. I don't know what Terrie told them.

Q. -- prior to the date of her 90-day separation notice?

A. I don't know.

Q. Are you aware of any information that Terrie communicated to the university that she was not going to return her laptop?

A. I don't know.

Q. Are you aware of any information that Terrie was going to retain her laptop during the entirety of her 90-day separation period?

A. I don't know. I don't know what she told them.

Q. Did you ask her about it?

A. No.

(Wynn Depo., at 75-77). However, unlike Plaintiff, Kovacs neither refused to return her laptop nor was she issued a direct order to do so, therefore, the conduct is not substantially identical because Kovac did not disobey a direct request. In contrast, Plaintiff received multiple explicit orders to return the laptop but refused to do so.

The Court finds Plaintiff has not established Defendant's legitimate, non-retaliatory reasons for his arrest were pretextual. Defendant instructed Plaintiff to return his laptop and Plaintiff's failure to comply with these instructions provide a valid basis for Defendant's actions. Therefore, Defendant's motion for summary judgment on Plaintiff's retaliation claim is granted.

After-Acquired Evidence Doctrine

Because the Court finds the claims in Plaintiff's Amended Complaint do not survive Defendant's motion for summary judgment, it need not address Defendant's argument regarding after-acquired evidence.

CONCLUSION

For the foregoing reasons, good cause appearing, it is

ORDERED that Defendant's Motion for Summary Judgment (Doc. 34) be, and the same hereby is, GRANTED.

 s/ James R. Knepp II
UNITED STATES DISTRICT JUDGE

Dated: June 7, 2024

24